SAILOR MUSIC, et al.

v.

MAI KAI OF CONCORD, INC.

No. C 85 227 L.

United States District Court,
D. New Hampshire.

June 19, 1986.

John C. Ransmeier, Ransmeier & Spellman, Concord, N.H., for plaintiffs.

John E. Laboe, Concord, N.H., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

LOUGHLIN, District Judge.

In this action, plaintiffs bring suit for monetary and injunctive relief against defendants Mai Kai of Concord and Peter S. Yee for violation of rights secured under the federal copyright law, 17 U.S.C. §§ 501, *et seq.* Jurisdiction is based upon 28 U.S.C. § 1331(a) and the matter is presently before the court on plaintiffs' motion for summary judgment pursuant to Fed.R. Civ.P. 56.

It is well established that summary judgment is appropriate only when the pleadings and other submissions show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed. R.Civ.P.; *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir.1986); *CIA Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 411 (1st Cir.1985). "In this circuit, the test to which a summary judgment motion must be put has traditionally been a stringent one. The moving party must affirmatively demonstrate that there is no genuine, relevant factual issue, and the court must look at the record in the light most favorable to the opposing party and indulge all inferences favorable to that party." *Worsowicz v. Nashua Corp.*, 612 F.Supp. 310, 311 (D.N.H.1985) (citations omitted). The pleadings and submissions in the present case reveal the following facts.

At all times pertinent to this action, plaintiffs were proprietors of the copyright for the following musical compositions:

| Plaintiff | Composition |
| --- | --- |
| Sailor Music | Abracadabra |
| Foreverendeavor Music | Talking In Your Sleep |
| Golden Torch Music Corp. and Radiola Music | Ghostbusters |
| Bruce Springsteen | Born In The USA |
| Bruce Springsteen | Dancing In The Dark |
| Sweet Summer Night Music and See This House Music | She Works Hard For The Money |
| Rare Blue Music, Inc. Boneidol Music and Rock Steady, Inc. (Rock Steady Music Division) | Rebel Yell |
| Billy Steinberg Music and Denise Barry Music | Like a Virgin |

Plaintiffs are also members of the American Society of Composers, Authors and Publishers ("ASCAP") to which they have granted the non-exclusive right to license non-dramatic public performances for profit of their musical compositions. ASCAP has a membership of greater than 23,000 and licenses over 30,000 establishments nationwide to perform any of the compositions in its repertory.

Defendant Peter Yee owns four restaurants in New Hampshire, each known as the Mai Kai Restaurant, located in Manchester, Hampton, Dover and Concord; each restaurant is separately incorporated. The Concord entity, Mai Kai of Concord, Inc., is a named defendant in this action. Mr. Yee is the present treasurer, director and sole shareholder for each of the Mai Kai Restaurants.

The defendant Mai Kai of Concord, Inc. (hereinafter Mai Kai) was opened for business in July, 1982. In March, 1983, B. Robert Gendreau, the New England District Manager for ASCAP, wrote to Mr. Yee seeking a license agreement for the Mai Kai. The correspondence went unheeded by defendants; ASCAP over the next two years, through March, 1985, attempted without success to reach a licensing agreement with defendants. The record reveals that from March, 1983 to March, 1985, ASCAP sent eleven letters to defendants, sent personal representatives

to speak with Mr. Yee, and counsel for ASCAP sent one letter to defendants seeking said license. Mr. Yee, not disputing that ASCAP contacted him, attributes his failure to acquire an ASCAP license to a shortage of funds and his belief that the license fee was unreasonably high. ASCAP sought a fee of $1133. Mr. Yee had licensed his three other restaurants in the past.

The Mai Kai presents live musical entertainment five nights a week, Tuesday through Saturday, with a cover charge imposed Thursday through Saturday night. In addition, a juke box on the premises provides musical entertainment for patrons. Mr. Yee oversees operation of the Mai Kai with the assistance of a manager. While vesting some responsibility for operation in the manager, Mr. Yee still sets hours and menu prices. Moreover, in conjunction with the manager, Mr. Yee made the business decision to have live entertainment in the restaurant. The manager makes the specific arrangements with the bands.

The tax return for the Mai Kai for the fiscal year ending April 30, 1984 revealed gross receipts totalling $890,783.00. Mr. Yee takes a salary from each of his four restaurants. From the defendant Mai Kai he receives $1500 per month. Defendant's 1983 tax return also reveals a deduction for music and entertainment totalling $80,365, such deduction attributable to payment for bands.

Faced with defendants' obstinacy, ASCAP sent two representatives to the Mai Kai on the night of January 11, 1985. The representatives paid a cover charge for admission and during the course of the evening were present for the performance of plaintiffs' copyrighted compositions. Mr. Yee acknowledges that the compositions were performed without permission of plaintiffs. The instant suit was filed in April, 1985 and Mr. Yee finally entered into a licensing agreement as to all four restaurants in October, 1985 for a fee of $1027.00.

The Copyright Act codified in Title 17 of the United States Code provides the owner of a copyright with the exclusive right, subject to express limitations, to perform or to authorize performance of copyrighted works. *See* 17 U.S.C. §§ 105 *et seq.* Moreover, any person who violates the exclusive rights of the copyright owner is an infringer of the copyright, 17 U.S.C. § 501(a), such that the copyright owner may seek injunctive relief, 17 U.S.C. § 502(a), statutory damages, 17 U.S.C. § 504(c)(1) and attorneys fees and costs, 17 U.S.C. § 505.

■ In order for a copyright owner to prevail in an infringement action, five elements must be established:

1. The originality and authorship of the compositions involved;

2. Compliance with the formalities of the Copyright Act;

3. That plaintiffs are the proprietors of the copyrights of the compositions involved;

4. That the compositions were performed publicly for profit; and

5. That the defendants had not received proper authorization for performance of the compositions.

*Blendingwell Music, Inc. v. Moor-Law, Inc.,* 612 F.Supp. 474, 479–80 (D.Del.1985) (citations omitted); *Fourth Floor Music, Inc. v. Der Place, Inc.,* 572 F.Supp. 41, 43 (D.Neb.1983) (citations omitted); *Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288, 1292 (D.R.I.1982) (citations omitted). The court finds and rules that plaintiffs are entitled to summary judgment. They have demonstrated the absence of any disputed facts with respect to the above enumerated elements for copyright infringement.

■ The first three elements of copyright infringement have been established through submission of photocopies of the certificates of Copyright Registration for the compositions at issue and the parties' further stipulation that such copies prove plaintiffs' copyright proprietorship. *See e.g. Blendingwell Music, Inc. v. Moor-Law, Inc.,* 612 F.Supp. at 480 ("registration certificates of copyright constitute *prima fa-*

*cie* evidence of originality, authorship, and compliance with statutory formalities, 17 U.S.C. § 410(c)").

■ The fourth element is similarly established through the unrebutted affidavits of ASCAP's representatives who sat through performances of the compositions on January 11, 1985. The performances were indisputably for defendants' profit as the music performed was an integral part of defendants' business; patrons had to pay a cover charge to hear the performances, and defendants sold liquor during the performances. *Id.; Warner Bros., Inc. v. O'Keefe,* 468 F.Supp. 16, 20 (S.D. Iowa 1977).

■ The last element in a copyright infringement action is also established. Mr. Yee acknowledged at his deposition that he had not sought nor received permission from plaintiffs to perform their compositions. Nor did defendants possess an AS-CAP license at the time of the alleged infringement. ASCAP's fruitless licensing attempts are well documented in the record. Accordingly, the court finds that copyright infringement in this case has been established.

Defendants raise basically two arguments in opposition to plaintiffs' motion for summary judgment. First, defendants contend that Mr. Yee, individually, cannot be held liable for the infringement, and second, that plaintiffs should be estopped from asserting a copyright infringement claim due to the impropriety of ASCAP and its representatives in seeking a license from defendants. The court finds these arguments to be without merit.

■ It is well established that a corporate officer will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement. *See Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Association, Inc.,* 423 F.Supp. 341 (D.Mass.1976), *aff'd,* 554 F.2d 1213 (1st Cir.1977). It is similarly established that " 'one may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.' " *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 913 (D.Conn.1980) (quoting *Gershwin Publishing Corp v. Colombian Artists Management, Inc.,* 443 F.2d 1159, 1161–62 (2d Cir.1971)). In the present case, there is no dispute that Mr. Yee, as sole shareholder, president, treasurer and director of the Mai Kai was the dominant influence in the corporation and developed the policy for provision of live musical entertainment resulting in the copyright infringement. In addition, he certainly had the right and ability to supervise the musical performances, and he certainly profited financially from the musical performances. The performances generated income for the Mai Kai from which he received a monthly salary. Accordingly, Mr. Yee, personally is jointly liable with defendant Mai Kai for the copyright infringement.

■ Defendants next argue that plaintiffs should be estopped from raising the infringement claim because of ASCAP's impriorietous actions in pursuing a license. Mr. Yee, at his deposition, testified that he felt the proposed license fee was unreasonably high and that he orally expressed this concern to ASCAP's representatives. According to Mr. Yee, no one explained his right to appeal the reasonableness of a license fee to the United States District Court for the Southern District of New York pursuant to the Amended Final Judgment in *United States of America v. American Society of Composers, Authors and Publisher, et al.,* Civil Action No. 13–95 (S.D.N.Y. March 4, 1950) (amending a 1941 consent decree). Paragraph IX (A) of that decree provides in pertinent part:

ASCAP shall, upon receipt of a written application for a license for the right of public performance of any, some or all of the compositions in the ASCAP repertory, advise the applicant in writing of the fee which it seems reasonable for the license requested. If the parties are unable to agree upon a reasonable fee with-

in sixty (60) days from the date when such application is received by ASCAP, the applicant therefor may forthwith apply to this Court for the determination of a reasonable fee and ASCAP shall, upon receipt of notice of the filing of such application, promptly give notice thereof to the Attorney General.

Mr. Yee's alleged ignorance of ASCAP procedures is not supported by the record before this court. Evidence pertaining to the other Mai Kai restaurants in New Hampshire are relevant regarding Mr. Yee's relationship with ASCAP and his knowledge of their proceedures. Thus, such evidence will be considered by the court.

The record reveals that ASCAP and Mr. Yee have a history dating back almost a decade relating to ASCAP's pursuit of a license for Mr. Yee's other restaurants. In correspondence dated July, 1979 to Mr. Yee, ASCAP sought a license agreement for Mai Kai of Dover, Inc. and included in that correspondence was a fully detailed brochure about ASCAP and its licensing procedures including the ability to appeal the reasonableness of a fee. Mr. Yee's memory is apparently selective when it comes to ASCAP procedures. The record reveals that ASCAP did successfully pursue a license for the Dover Mai Kai, despite periodic defaults by Mr. Yee. ASCAP acknowledges its previous relationship with Mr. Yee in its March, 1983 letter initially seeking a license for the Mai Kai in Concord. Therein it is written:

> Since we have had numerous dealings in the past, it will be unnecessary for me to go into a lengthy explanation about ASCAP the United States copyright Law and musical performances as they relate to your establishment.

The numerosity of dealings is undisputed and Mr. Yee cannot now argue estoppel in light of the information about ASCAP previously provided him.

In rejecting defendant's estoppel argument, the court notes further that ASCAP, in the majority of its correspondence dating from March, 1983 to the initiation of suit, advised Mr. Yee that if he desired additional information about ASCAP, he need only write to ASCAP and his questions would be promptly answered. *See* correspondence dated March 13, 1983, September 10, 1983, December 5, 1983, January 26, 1984, May 25, 1984, July 23, 1984 and September 6, 1984. Mr. Yee chose to ignore this advice, which is not surprising considering his testimony that he did not even bother to read the letters from ASCAP but rather set them aside because he knew ASCAP wanted money for a license. While it is true that he orally expressed his concern about the license fee to an ASCAP representative, Mr. Yee's cavalier attitude about ASCAP's myriad correspondence and his total lack of vigor in pursuing his complaint with ASCAP militates against the equitable relief he now seeks.

Plaintiffs, having prevailed on their motion for summary judgment and establishing that defendant's infringed their copyright in eight instances, seek injunctive relief, monetary damages, costs and attorneys fees. The court deals with the requested relief *seriatim*.

Injunctive relief is available to a prevailing party in a copyright infringement action. 17 U.S.C. § 502(a). An injunction will issue when there is a " 'substantial likelihood of further infringement of plaintiffs' copyrights.' " *Rare Blue Music, Inc. v. Gotauco*, 551 F.Supp. at 1295). Defend-(D.Mass.1985) (quoting *Milene Music, Inc. v. Gotauco*, 551 F.Supp. at 1295)). Defendants herein argue that injunctive relief is not warranted since an ASCAP license was obtained in October, 1985. The court finds the decision in *Milene Music, Inc. v. Gotauco* instructive wherein Judge Selya of the United States District Court for the District of Rhode Island rejected a similar argument in an infringement action.

In *Milene Music*, the defendants argued that injunctive relief should not issue because they were, at the time of the court's decision, in compliance with ASCAP's requirements, having paid license fees to permit performances of plaintiffs' copyrighted compositions. The court, notwithstanding such current licensure, restrained and en-

joined the defendants after considering defendants' historical difficulties with AS-CAP.

The scope of the court's injunction is noteworthy.

> The history of defendants' actions, however, as chronicled in the pleadings, exhibits an unfortunate tendency conveniently to ignore, from time to time, both ASCAP and the plaintiffs' proprietary rights. As the Court has hitherto noted, these rights are proprietary in nature, and are deserving of protection. To guard against future encroachment, the Court will permanently restrain and enjoin defendants, and all persons acting under the direction, control, permission or authority of defendants, from publicly performing the aforementioned compositions or any of them, and from causing or permitting the said compositions to be publicly performed at [defendants' premises], or in any place owned, controlled or conducted by defendants, and from aiding or abetting the public performance of such compositions in any such place or otherwise, directly or indirectly, in violation of the Act.

*Milene Music*, 551 F.Supp. at 1295–96.

■ In the present case, defendants checkered history of compliance or lack thereof with ASCAP requirements leads the court to conclude that an injunction should issue. ASCAP labored unsuccessfully over two years to license defendant Mai Kai; the Mai Kai of Dover, Inc. has on several occasions since 1977 breached and defaulted under an ASCAP licensing agent, the most recent default occurring on January 1, 1986. Defendants have exhibited "an unfortunate tendency conveniently to ignore" plaintiffs' proprietary rights. Accordingly, an injunction is hereby issued this day permanently enjoining defendants and all persons acting under their direction or control, from publicly performing or causing to be performed the subject compositions at the Mai Kai of Concord, Inc., or any other establishment owned or controlled by defendants, and from aiding or abetting the public performance of said compositions in any such place, directly or indirectly, in violation of Title 17 of the United States Code. Without this sanction, the court is concerned that there would be substantial likelihood of further infringement of plaintiffs' copyrights.

Plaintiffs also seek statutory damages pursuant to 17 U.S.C. § 504(c)(1). This section of the Copyright Act provides that a copyright owner may elect to recover, instead of actual damages, "an award of statutory damages for all infringements involved in the action, with respect to any one work, ... for which any two or more infringers are liable jointly and severally, in a sum of not less that $250 or more than $10,000 as the court considers just." Plaintiffs here seek statutory damages of $1,000 per infringement, for a total of $8,000 in damages.

■ The amount of statutory damages to be awarded in a copyright infringement action under 17 U.S.C. § 504(c)(1) is left to the sound discretion of the court. *Rare Blue Music, Inc. v. Gutadauro*, 616 F.Supp. at 1530. The court will consider certain factors in making an award determination including (1) the expenses saved and the profits reaped by defendants in connection with the infringement; (2) lost revenues to the plaintiffs; and (3) whether the infringement was willful and knowing, or whether it was accidental and innocent. *Id.* (citations omitted). Courts have placed great emphasis on the element of intent, with the award increasing proportionally with defendant's blameworthiness. *Milene Music, Inc. v. Gotauco*, 551 F.Supp. at 1296 (citations omitted).

■ Defendants' blameworthiness here is significant. They avoided paying an ASCAP license for over two years. The license fee finally accepted in October, 1985 was $1027. Thus, the court surmises that for the period in question defendants avoided paying over $2,000 in license fees. In addition, defendants' conduct from 1983 to 1985 demonstrates an intentional violation of plaintiffs' copyrights by virtue of the total disregard for ASCAP's licensing efforts. Defendants conduct is rendered

more egregious since Mr. Yee was familiar with ASCAP and the licensing procedure from his experience as owner of the Mai Kai of Dover, Inc. He had in fact licensed that establishment in the past.

 The court must consider also that defendants did finally procure an ASCAP license in October, 1985 and that the loss of revenue to plaintiffs is not substantial. Based upon the above considerations, as well as the deterrent value of statutory damages, the court concludes that an award of $550 for each of the infringing acts is just and proper. *See Rare Blue Music, Inc. v. Guttadauro*, 616 F.Supp. at 1531 ($1,000 per infringement where knowing violation); *Blendingwell Music, Inc. v. Moor-Law, Inc.*, 612 F.Supp. 486 ($500 per infringement where knowing violation); *Milene Music, Inc. v. Gotauco*, 551 F.Supp. at 1297 ($625 per infringement where knowing violation).

Finally, plaintiffs seek costs and attorney fees. Counsel for plaintiffs has submitted an affidavit indicating costs totalling $259.75 for filing and service fees as well as stenographic services. Said affidavit also indicates counsel's hours spent in preparing this case and his fee for services ($3,450). It is accepted practice for courts to award costs to prevailing copyright owners in actions such as this. *See Milene Music, Inc. v. Gotauco*, 551 F.Supp. at 1297. The court cannot discern any reason to deviate from that practice in this case and accordingly, will award costs and attorneys fees.

An award of attorneys fees is permitted under 17 U.S.C. § 505 to a prevailing party in a copyright infringement case and such award and its amount rests within the sound discretion of the court. *Milene Music*, 551 F.Supp. at 1297 (citing *Quinto v. Legal Times of Washington, Inc.*, 511 F.Supp. 579, 581 (D.D.C.1981)). In determining the amount of fees that should be awarded the court will consider, among other things, counsel's time and labor, the complexity of the case, the amount recovered, and the reasonableness of the time spent by counsel. 551 F.Supp. at 1298. After weighing these factors, this court is satisfied that plaintiffs' requested fee of $3,450 is fair and reasonable. Accordingly, this court awards to plaintiffs $3,450 in attorneys fees and $259.75 in costs for a total of $3,709.75.

In conclusion, the court finds that plaintiffs are entitled to judgment as a matter of law since the undisputed facts reveal that defendants violated Title 17 of the United States Code by infringing plaintiffs' copyrights. Plaintiffs are entitled to statutory damages of $4,400 (8 infringements, $550 per infringement), costs of $259.75 and attorneys fees of $3,450. Damages, costs and attorneys fees, therefore total $8,109.75.

SO ORDERED.