**HULEX MUSIC; Somerset Songs Publishing, Inc.; E.S.P. Management, Inc.; Bruce Springsteen; Flyte Tyme Tunes; Rare Blue Music, Inc.; Boneidol Music; Rock Steady, Inc.**

v.

**Edward SANTY.**

**Civ. No. 86–473–D.**

United States District Court,
D. New Hampshire.

March 29, 1988.

Supplemental Opinion May 16, 1988.

John C. Ransmeier, Concord, N.H., for plaintiffs.

Charles A. Russell, Peter Lynch, Concord, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

Plaintiffs bring this copyright infringement action pursuant to the Copyright Act of 1976 ("Copyright Act" or "Act"), 17 U.S.C. § 101, *et seq.*, alleging that defendant intentionally infringed their registered copyrights in five songs by playing the songs in his business establishment without paying copyright licensing fees. Plaintiffs seek the full panoply of relief permitted under the Act: injunctive relief, statutory damages, costs, and attorney's fees. Jurisdiction of the Court is alleged via 28 U.S.C. § 1338(a).

Three motions are at bar: defendant's motion to dismiss four of the five causes of action for lack of subject matter jurisdiction, Rule 12(b)(1), Fed.R.Civ.P.; defendant's motion for leave to file a supplemental answer, counterclaim, and third-party claim, Rules 13(e), 14(a), 15(d), Fed.R. Civ.P.; and plaintiffs' motion for summary judgment, Rule 56(c), Fed.R.Civ.P. Pleadings, exhibits, affidavits, deposition transcripts, pretrial statements, and objections to the pending motions having been filed, and the issues raised by this litigation being clear, the Court resolves the merits of the pending motions on the documents as filed. Rule 11(g), Rules of the United States District Court for the District of New Hampshire.

## FACTUAL BACKGROUND

Defendant Edward Santy is the sole owner and on-site manager of a Littleton, New Hampshire, lounge and bowling alley named "Ed's Place" ("Ed's"). Santy has operated Ed's since 1983. From 1983 to 1986 Ed's steadily increased its utilization of live entertainment to draw lounge patrons, and in 1986 offered live band entertainment in the lounge on Thursday, Friday, and Saturday nights. In addition to live entertainment, the lounge has a jukebox. The lounge seats approximately 150 persons, and a cover charge is imposed on Friday and Saturday nights. Defendant's Pretrial Statement at A (uncontested facts); Santy Dep. at 22.

Plaintiffs are music composers and publishers who license their copyrighted works through the American Society of Composers, Authors, and Publishers ("ASCAP") to individuals and businesses desiring to publicly perform or broadcast said works. Although Ed's is currently in the process of applying for an ASCAP license, prior to this litigation Ed's was not licensed, despite numerous entreaties to that end by ASCAP. *See* Affidavit of John A. Bonaccorso, ASCAP New England District Manager, ¶¶ 6–7 & attached exhibits; Affidavit of Richard H. Reimer, ASCAP Assistant General Counsel, ¶¶ 9–11.

■ As approximately 9:30 p.m. on the night of July 19–20, 1986, two ASCAP undercover agents visited Ed's to record the titles of musical compositions played during their visit.[1] The agents each paid a two-dollar cover charge to enter the lounge area and remained there for approximately four hours. *See* duplicate Affidavits of Susan Smith–Maddern and Kevin Smith at ¶ 3 and attached Exhibit A at 1 (individual inspection reports).

In their subsequent reports, the agents detailed that a four-person band performed while they were in the lounge, that songs were played on the jukebox, and that music emanating from either source was perceptible in all parts of the building via numerous speakers. *Id.*, Exhibit A at 1, 3–4. The agents also identified the titles of forty-three songs which were performed or played during their visit. Five of these songs, each copyrighted by a plaintiff herein, form the basis of the instant complaint. Plaintiffs contend that each unauthorized performance of one of their copyrighted works constitutes a separate cause of action, five causes of action or "counts" in total.[2]

## RULINGS OF LAW

### *Defendant's Motion to Dismiss*

■ The Copyright Act grants to the owner of a copyrighted musical work the exclusive right to publicly perform or authorize another to publicly perform the owner's copyrighted work. 17 U.S.C. § 106(4). Violation of these exclusive rights constitutes copyright infringement, *id.* § 501(a), and is remediable by way of injunctive relief, *id.* § 502(a), actual or statutory damages, *id.* § 504(a), and reimbursement of the costs of bringing suit, including reasonable attorneys' fees, *id.* § 505. Based on this statutory framework, a copyright owner may assign the licensing of his or her ownership rights in copyrighted property to others, such as ASCAP, on terms amenable to the owner. *See, e.g., Milene Music, supra* note 1, 551 F.Supp. at 1292 (and citations therein). In the instant action, ASCAP served as the licensor for all plaintiffs in this regard.

Recordation in the Copyright Office of the instrument evidencing a transfer of copyright ownership from the work's author to the holder asserting the right is a jurisdictional prerequisite to a copyright infringement action. 17 U.S.C. §§ 204(a), 205(d); *Techniques, Inc. v. Rohn*, 592 F.Supp. 1195, 1197 (S.D.N.Y.1984). Plaintiffs do not dispute that at the time defendant filed his motion, the transfer instruments in Counts 1, 2, 4, and 5 were not recorded. Defendant accordingly moves to dismiss those counts.

Recordation following the filing of an infringement action is permitted under the Act, with recordation relating back "so that the assignee acquires a right to sue as of the date of filing the action." *Co–Opportunities, Inc. v. NBC*, 510 F.Supp. 43, 48–49 (N.D.Cal.1981); *see also Wales Indus. v. Hasbro Bradley, Inc.*, 612 F.Supp. 510,

---

1. Use of such undercover agents is lawful in copyright infringement investigations. *See Merrill v. County Stores, Inc.*, 669 F.Supp. 1164, 1167 (D.N.H.1987) (citing *Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1291 (D.R.I.1982)).

2. Pertinent information as to the songs' titles, the dates of publication, and ownership of the copyrighted works at issue is appended to the complaint in table format (Schedule A). Five sequentially numbered causes of action are therein set forth: each based on one of the five allegedly infringed copyrighted songs. For the sake of uniformity with the documents filed by the parties, reference is hereinafter made to the five Schedule A causes of action as "counts".

514–15 (S.D.N.Y.1985). Inasmuch as it is undisputed that plaintiffs in Counts 1, 4, and 5 complied with the statutory recordation requirements subsequent to receiving defendant's motion, Reimer Aff. ¶¶ 4–6 & attached Exhibit B (certificates of recordation), defendant's motion to dismiss Counts 1, 4, and 5 must be denied.

As to Count 2, plaintiffs concede that the relevant transfer instruments have not been recorded. *Id.* ¶¶ 4, 6; Reply Memorandum in Support of Plaintiffs' Motion for Summary Judgment at 1 n. 1. Therefore, defendant's motion to dismiss is granted as to Count 2.

*Defendant's Motion for Leave to Amend*

Defendant moves for leave to file a supplemental answer, counterclaim, and third-party claim. He asserts that the Court should implead ASCAP as a party plaintiff or as a third-party defendant, that state law counterclaims defendant is asserting against ASCAP should be resolved with plaintiffs' copyright infringement claims, and that defendant is entitled to damages of $10,000, costs, attorney's fees, a "royalty free permanent license to utilize plaintiffs' and ASCAP's works," statutory damages in the amount of one dollar, and injunctive relief to prevent plaintiffs from bringing future infringement actions against him. Defendant does not point to specific theories of recovery or state or federal law pursuant to which the Court may grant the relief he seeks.[3]

When parsed, the supplemental answer, counterclaim, and third-party claim defendant seeks to file set forth four arguments in support of the relief he seeks. First, defendant argues that he may assert a third-party claim against ASCAP because, although he requested ASCAP agents to provide him with a list of all of the songs under its licensing authority on several occasions during numerous pre-suit contacts with ASCAP, ASCAP refused to do so. Proposed Third–Party Claim, Count I, ¶¶ 2–6. Second, defendant argues that ASCAP should be made a party because it is ASCAP which "controls" this litigation and is the real party in interest, not plaintiffs, who defendant alleges are not even aware of the suit's pendency. *Id.;* Proposed Counterclaim ¶ 3; Proposed Supplemental Answer ¶¶ 1–2. Third, defendant argues that he should be allowed to assert a third-party claim against ASCAP because plaintiffs and ASCAP have conditioned settlement of this suit on payment of ASCAP fees for a time predating registration of the songs at issue here, and they are therefore misusing the Copyright Act by wrongfully seeking to temporally extend their copyright monopoly. Proposed Third–Party Claim, Count I, ¶¶ 13–14, 17; Proposed Counterclaim ¶¶ 4–6; Proposed Supplemental Answer. ¶¶ 3–4, 7–8. Fourth, defendant argues that he has a valid state-law claim against ASCAP because ASCAP used coercive tactics in its efforts to obtain his compliance with ASCAP licensing requirements, including one incident in which an ASCAP agent allegedly physically threatened defendant by poking him in the chest, and that this claim should be heard with the copyright infringement claim. Proposed Third–Party Claim ¶¶ 7–8, 18–19; Proposed Supplemental Answer ¶ 5. The Court addresses these arguments seriatim.

Disposition of defendant's motion is controlled by Rule 15(a), Fed.R.Civ.P., which provides that a party may amend its "pleading", a term defined by Rule 7(a) as including answers, counterclaims, and third-party claims. *See* Rules 7(a) and 15(a), Fed.R.Civ.P.; C. Wright & A. Miller,

---

3. Defendant's motion is procedurally defective because it is not supported by legal authority. Counsel's failure in this regard directly contravenes the Local Rules of this court, which state: "A moving party shall serve and file with every motion grounded in law in a civil or criminal proceeding a memorandum with citations of supporting authorities or a statement that no brief is necessary and the reasons therefor." Rule 11(c), Rules of the United States District Court for the District of New Hampshire.

It is this Court's general practice to return motions that do not comply with Rule 11(c) without considering them. On this occasion, in the interest of justice and in order to conserve scant judicial resources by forestalling a motion for reconsideration, the Court considers defendant's motion. Counsel is hereby forewarned that future compliance with the Local Rules will be expected.

6 *Federal Practice and Procedure* [hereinafter 6 *Wright & Miller*] § 1475, at 387 (1971). The decision to grant or deny a Rule 15(a) motion to amend lies within the sound discretion of the district court. *Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 4 (1st Cir.1983). While leave to amend is "freely given when justice so requires," Rule 15(a), Fed.R.Civ.P.; *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); "if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave ·to amend," 6 *Wright & Miller* § 1487, at 432–33 & n. 58 (1971 & Supp. 1987) (citing, *e.g.*, *Demars v. General Dynamics Corp.*, 779 F.2d 95, 99 (1st Cir. 1985) (court may deny motion if amendment futile)).

■ As to defendant's first argument, ASCAP is under no legal obligation to provide defendant with a complete list of the songs in its repertory. ASCAP's duty ends at apprising potential infringers that they may obtain information from ASCAP as to whether specific songs are under ASCAP control. *See, e.g., Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Ass'n*, 554 F.2d 1213, 1215 (1st Cir.1977). In the instant case, defendant was apprised on numerous occasions that he had only to ask or write ASCAP to find out whether particular compositions were licensed to ASCAP. Bonaccorso Aff., Exhibit A (letters and documents to plaintiff). Therefore, ASCAP complied with its limited duty toward defendant. Allowing amendment to include this claim would be futile, and it is accordingly denied.[4]

■ The fact that ASCAP may or may not "control" this litigation does not provide a basis for making ASCAP a party. A copyright infringement action may only be brought by the "legal or beneficial owner" of a copyright, and joinder or intervention is limited to persons "having or claiming an interest in the copyright." 17 U.S.C.

§ 501(b). Herein, ASCAP is merely the licensing agent of each plaintiff; it is neither the legal nor the beneficial owner of the copyrights at issue, and neither has nor claims an interest in those copyrights. Accordingly, joinder of ASCAP is inappropriate either permissively or as an indispensable or necessary party. *See* Rules 19 and 20, Fed.R.Civ.P.; *see also, e.g., Hulex Music v. C.F. Maint. & Prop. Mgmt.*, 115 F.R.D. 303, 304 (D.Neb.1987) (citing *Famous Music Corp. v. Maholias*, 53 F.R.D. 364, 375 (E.D.Wis.1971)).

■ Impleader of ASCAP as a third-party defendant is inappropriate because the Federal Rules provide that impleader is appropriate only if the party sought to be impleaded "is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Rule 14(a), Fed.R.Civ.P. In the instant case, defendant has failed to allege, and the Court's research has failed to reveal, any theory of liability on which ASCAP is or may be liable to defendant for all or part of plaintiffs' claims against Ed's. Therefore, ASCAP is not a proper third-party defendant. *See* J. Moore, 3 *Moore's Federal Practice* ¶ 14.04, at 14–28 (2d ed. 1987); *see also Ocasek v. Hegglund*, 673 F.Supp. 1084, 1087–88 (D.Wyo.1987).

■ Defendant next alleges that because ASCAP's licensing practices are improper, he is entitled to varying forms of relief, including a royalty-free ASCAP license. Resolution of this issue involves interpretation and application of the consent decree and amended final judgment issued in *United States v. ASCAP*, 1950–51 Trade Cas. (CCH) ¶ 62,595 (S.D.N.Y.1950) (attached as Appendix B to Plaintiffs' Memorandum in Opposition to Defendant's Motions [hereinafter "Plaintiffs' Mem."]). In that decision, ASCAP licensing practices were comprehensively regulated, and the United States District Court for the Southern District of New York specifically retained jurisdiction to consider future chal-

---

**4.** Defendant's proposition would seriously burden· implementation of the Copyright Act by posing an impractical burden on organizations such as ASCAP. Not only are compositions added daily to ASCAP's repertory, but its index of works already comprised three volumes in 1977 and presumably has grown. *See Famous Music, supra,* 554 F.2d at 1215.

lenges to such practices. *Id.* ¶ XVII, at 11. In view of that court's continuing jurisdiction, and considering that challenges to AS-CAP's licensing practices will implicate provisions of the consent decree therein entered, allowing litigation of defendant's claims against ASCAP in this court would give rise to the possibility that ASCAP would be bound to follow two or more conflicting judgments. *See Hulex Music v. C.F. Maint. & Prop. Mgmt., supra,* 115 F.R.D. at 304–05. Accordingly, this Court declines jurisdiction in favor of the Southern District of New York. *See, e.g., id.* at 305; *Dolfi Music, Inc. v. Forest Inn, Inc.,* 59 F.R.D. 5, 7 (E.D.Wis.1973). Amendment is denied as to this claim.

▪ Finally, defendant contends that AS-CAP's use of strongarm tactics permits him to assert a counterclaim in this action. Athough not specified by defendant, the theories of liability on which his counterclaim is based presumably sound in tort. Defendant's counterclaim thus depends on state law, whereas the instant action centers on copyright infringement, and thus involves application of federal law. AS-CAP, the purported tortfeasor, is not a party to this suit. And, there are no allegations that plaintiffs were in any way involved in or even cognizant of the intimidatory tactics on which defendant's claim is based. Consequently, establishing liability would involve different questions of law, different evidence, and different parties than are involved in the instant case. Defendant's proposed counterclaim against ASCAP would not survive a motion to dismiss, and the Court must therefore deny as futile his motion to include his tort claim in this action. *See Music City Music v. Avalon,* 217 U.S.P.Q. 399, 400 (D.Mass.1981) (citing *Great Horizons Dev. Corp. v. Massachusetts Mut. Life Ins. Co.,* 457 F.Supp. 1066 (D.Ind.1978), *aff'd without opinion,* 601 F.2d 596 (7th Cir.1979)) (attached as Appendix D to Plaintiffs' Memo); *Ocasek, supra,* 673 F.Supp. at 1087.

In sum, the Court finds and rules that the claims and defenses defendant seeks to assert in his supplemental answer, counterclaim, and third-party claim are legally insufficient. Therefore, amendment pursuant to Rule 15(a), Fed.R.Civ.P., would be futile, and defendant's motion (document no. 12), must be denied.

*Plaintiffs' Motion for Summary Judgment*

▪ In order to show copyright infringement, a plaintiff must establish five elements: (1) the originality and authorship of the works involved, (2) compliance with the formalities of federal copyright law, (3) rightful proprietorship of the copyrights at issue, (4) that the copyrighted works were performed publicly for profit, and (5) a lack of authorization by the owner or the owner's representative for the alleged infringer to publicly perform the works. *See, e.g., Merrill v. County Stores, supra,* 669 F.Supp. at 1168; *Sailor Music v. Mai Kai of Concord, Inc.,* 640 F.Supp. 629, 632 (D.N.H.1986) (and citations therein). Plaintiffs assert that there is no genuine dispute as to the existence of these elements in the instant case and that they are therefore entitled to summary judgment in their favor.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The burden is upon the moving party to establish the lack of a genuine, material, factual issue, *Finn v. Consolidated Rail Corp.,* 782 F.2d 13, 15 (1st Cir. 1986), and the Court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence, *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987). If a motion for summary judgment is properly supported, the burden of proof shifts to the nonmovant to show that a genuine issue exists. *Donovan v. Agnew,* 712 F.2d 1509, 1516 (1st Cir.1983); *Sailor Music v. Mai Kai of Concord, supra,* 640 F.Supp. at 633.

Plaintiffs assert that they have established all of the elements necessary to show that defendant infringed their copy-

righted works. *See* Plaintiffs' Memo at 5–7 (and citations therein to defendant's pretrial statement, affidavits, exhibits, and Santy Dep.). Defendant has refuted these assertions only as to Count 2 in connection with plaintiffs' failure to record the instrument of copyright transfer, an issue which has been resolved previously in this Order in defendant's favor. Plaintiffs' properly supported motion being unopposed, the Court herewith finds and rules that undisputed facts establish defendant's infringement of plaintiffs' valid copyrights. Plaintiffs are herewith granted summary judgment in their favor.

Defendant having been found liable for violation of the Copyrights Act, the Court turns to the issue of appropriate relief. Plaintiffs request injunctive relief, statutory damages, costs, and attorney's fees.

*Entitlement to Copyright Infringement Relief*

■ Courts may grant temporary and permanent injunctions to prevent or restrain copyright infringements if a "substantial likelihood of further infringement" exists. *Sailor Music v. Mai Kai of Concord, supra,* 640 F.Supp. at 634; 17 U.S.C. § 502(a). In circumstances such as exist here, in which it is clear that a defendant has vigorously rebuffed all ASCAP pre-suit solicitations to become licensed, injunctive relief is appropriate even if the defendant is currently in the process of obtaining a license. *See, e.g., Merrill v. County Stores, supra,* 669 F.Supp. at 1171 (and citations therein). Accordingly, defendant and all persons acting under his direction, permission, control, or authority are herewith permanently enjoined from performing the musical compositions set forth in Counts 1, 3, 4, and 5 of the complaint; from causing or permitting said compositions to be performed in defendant's premises or any other place owned, controlled, managed, or conducted by defendant; and from aiding or abetting the public performance of said compositions in any such place or otherwise.

As provided by section 504(a) of the Act, plaintiffs seek statutory damages in lieu of actual damages. This provision is designed to deter and discourage wrongful conduct. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952). Statutory damages may range from $250 to $10,000 per infringement, 17 U.S.C. § 504(c), and the precise amount of the award is left to the district court's sound discretion, *e.g., Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.,* 725 F.2d 1, 2–3 (1st Cir.1983).

■ The Court considers several factors in determining a just award under section 504(a): the amount of plaintiffs' lost revenues, the expenses saved and profits reaped by defendant in connection with the infringement, the size of defendant's operation, and whether the infringement was willful, measured in part by the extent to which defendant resisted ASCAP licensing. *See, e.g., id.* at 3–4; *Merrill v. County Stores, supra,* 669 F.Supp at 1171; *Sailor Music v. Mai Kai of Concord, supra,* 640 F.Supp. at 635. Where, as here, plaintiffs have not offered proof of actual damages, the Court must award *at least* the statutory minimum damages of $250 for each infringement. *Jewell–LaSalle Realty Co. v. Buck,* 283 U.S. 202, 51 S.Ct. 407, 75 L.Ed. 978 (1931).

As to plaintiffs' lost revenues, plaintiffs assert without refutation that had Ed's been properly licensed from October 1983 to October 1987, based on an annual license fee rate of $567, total ASCAP license fees would have amounted to $2,318. Bonaccorso Aff. ¶ 8. As to the size of defendant's operation and the profits reaped by him in connection with his infringement, evidence before the Court establishes that dollar volume expended on live entertainment at Ed's increased from $18,000 in 1984 to more than $36,000 in 1986, and gross receipts increased from $103,681 in 1985 to $160,032 in 1986. Defendant's Pretrial Statement at 1; Santy Dep. Exhibits 29 and 30 (IRS tax Forms 1040). In 1986 Ed's had a gross profit of $81,359 and a net profit of approximately $11,000. Santy Dep. Exhibit 30.

Defendant asserts that whether he willfully infringed plaintiffs' copyrights is at issue, based on an issue of fact which ex-

ists as to whether a compulsory license certificate was affixed to the jukebox in Ed's lounge. Defendant asserts that such a certificate was affixed, that affixation allowed use of the jukebox without copyright infringement liability under the "jukebox exemption" of the Copyright Act, 17 U.S.C. § 116, and that his compliance with the law in obtaining and affixing the certificate indicates that he did not willfully intend to infringe plaintiffs' copyrights.

■■■ As a threshold matter, the jukebox exemption applies only to establishments "making no direct or indirect charge for admission." *Id.* § 116(e)(1)(B). Ed's unrefutedly charged a two-dollar cover on the night that the jukebox was used to play plaintiffs' copyrighted songs. Defendant's Pretrial Statement ¶ A. Therefore, the section 116 exemption is inapplicable. *See MCA, Inc., v. Parks,* 796 F.2d 200, 203 (6th Cir.1986) (and citations therein). Furthermore, plaintiffs have established without refutation that ASCAP agents informed defendant by letter that the jukebox exception was inapplicable, and defendant received the letter prior to his infringing activities. *See* Bonaccorso Aff. Exhibit A (letter of Mar. 7, 1986); Santy Dep. at 55. In light of defendant's receipt of this information, and considering evidence before the Court establishing that defendant received numerous personal visits from and written entreaties by ASCAP to become licensed, beginning in 1983 when ASCAP representatives first became aware that copyrighted music was being played at Ed's, *see* Bonaccorso Aff. ¶¶ 6–7 & attached exhibits, the Court finds defendant's protestations of good faith disingenuous.

After consideration of the above factors in light of the policy of deterrence embodied in section 504(a), the Court feels that an award of $1,250 per infringement ($5,000 in total) is appropriate. As this Court has previously stated: "[A] copyright infringer 'cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law.'" *Merrill v. County Stores, supra,* 669 F.Supp. at 1171–72 (quoting

*Ackee Music, Inc. v. Williams,* 650 F.Supp. 653, 657 (D.Kan.1986)) (in turn quoting *Iowa State U. Research Found. v. ABC,* 475 F.Supp. 78, 83 (S.D.N.Y.1979)).

It is accepted practice for courts to award costs to prevailing copyright owners in copyright infringement actions. *See, e.g., Sailor Music v. Mai Kai of Concord, supra,* 640 F.Supp. at 636 (and citations therein). The Court sees no reason to deviate from this practice here. Plaintiffs would not have had to bring this action but for defendant's recalcitrance to submit to that which the law demands of him.

■■■ It is also within the Court's sound discretion to determine whether and to what degree attorney's fees should be awarded to a prevailing copyright owner in an action such as this. 17 U.S.C. § 505; *Sailor Music v. Mai Kai of Concord, supra,* 640 F.Supp. at 636 (citing *Milene Music, supra,* 551 F.Supp. at 1297). In determining the amount of a reasonable award, the Court considers, inter alia, "counsel's time and labor, the complexity of the case, the amount recovered, and the reasonableness of the time spent by counsel." *Sailor Music v. Mai Kai of Concord, supra,* 640 F.Supp. at 636 (citing *Milene Music, supra,* 551 F.Supp. at 1298).

Plaintiffs' local counsel has submitted an affidavit and attached exhibit (Exhibit A) to support plaintiffs' request for attorney's fees. Exhibit A carefully delineates and justifies in tenth-hour segments a total of 61.6 hours spent by plaintiffs' local counsel prosecuting this action. In his affidavit, counsel notes that ASCAP's counsel also expended 24 hours in initially drafting the legal memoranda filed in this matter and that, had ASCAP's counsel not expended said hours, local counsel would have had to perform the same or comparable work locally. Local counsel also attests that "the legal fees in this case reflect inefficiencies in the prosecution of the case arising from the fact that the Defendant has used three different counsel in defending his interests." Ransmeier Aff. at 3. Defendant has neither contested the accuracy of Exhibit A nor asserted that the total number

of hours expended by plaintiffs' local and ASCAP counsel were unreasonable.

In view of defendant's failure to contest plaintiffs' assertions, and after considering the factors set forth above, the Court is satisfied that with two minor exceptions, local counsel's time charges as reflected in Exhibit A were fairly required to be spent on this matter. Said exceptions are disallowed by reason of their lack of specificity. They are as follows.

(1) The entry of .2 hour on November 3, 1986, charged to local counsel for "Telephone conference with Mr. Davis' office," which does not specify the purpose of the call.

(2) The entry of .5 hour on November 16, 1987, charged to "AFP", a unknown person of unknown legal qualifications, identified only by the notation "To Federal Court." The Court finds this notation to be too vague for the purpose of determining reasonable attorney's fees.

The total of the above-disallowed entries is .7 hours, reducing local counsel's stated hours to a total of 60.9. On a pro rata basis, the total amount of fees is thus reduced from the $7,700 requested by local counsel (at a rate of $125 per hour) to $7,612.50. The Court being satisfied that the skill required of and employed by local counsel was of the highest quality, the Court herewith approves counsel fees to plaintiffs in the amount of $7,612.50.

As to the hours expended by counsel for ASCAP, the Court has not seen an affidavit from the attorney involved attesting that he expended said hours, nor has the Court seen documentation detailing how the alleged hours were spent. Accordingly, at this juncture the Court will not approve ASCAP's counsel's fees. The Court will, however, retain jurisdiction over this matter to allow ASCAP's counsel to file the needed documentation.

Counsel for ASCAP is hereby granted a period of ten days from the date of this Order to file a properly-supported request for attorney's fees. Defendant may respond to said request in accordance with Local and Federal Rules, and in due course the Court will consider the request. Sim-ilarly, plaintiffs' local counsel is hereby granted a period of ten days from the date of this Order in which he may file a properly documented request for the .7 hour the Court disallowed above, and defendant may respond thereto.

### CONCLUSION

Defendant's motion to dismiss Counts 1, 2, 4, and 5 for lack of subject matter jurisdiction (document no. 11) is granted as to Count 2, but denied as to Counts 1, 4, and 5. Defendant's motion for leave to file a supplemental answer, counterclaim, and third-party claim (document no. 12) is denied. Plaintiffs' motion for summary judgment (document no. 14) is granted.

As set forth in greater detail above, plaintiffs are entitled to and are herewith granted injunctive relief precluding further infringement, their costs, statutory damages in the amount of $5,000, and attorney's fees in the amount of $7,612.50. The Court retains jurisdiction of this matter to consider further requests for attorney's fees.

SO ORDERED.

### SUPPLEMENTAL OPINION

In the Court's previous Order in this litigation, it granted plaintiffs injunctive relief, costs, statutory damages, and attorney's fees in a matter arising out of defendant's intentional infringement of plaintiffs' registered copyrights in five songs. As part of the Court's award of attorney's fees to plaintiffs, it delayed approval of ASCAP's counsel's fees pending receipt of a properly-supported request for said fees. Richard H. Reimer, Assistant General Counsel of ASCAP, filed his affidavit in response to that invitation on April 8, 1988. In his affidavit, Mr. Reimer attested that he spent a total of 24 hours on work relating to this action, work which would otherwise have had to have been performed by plaintiffs' local counsel with less efficiency and more expenditure of time.

In response to Mr. Reimer's request, and in response to the Court's award of attorney's fees to plaintiffs in its Order of

March 29, 1988, defendant Edward Santy has filed three motions. The gravamen of these motions is as follows. First, Mr. Santy moves for an award of attorney's fees as the prevailing party in Count II of the five-count complaint which initiated this action. Said count was dismissed in the March 29 Order because Somerset Songs Publishing, Inc., the plaintiff in Count II, had failed to properly record the transfer of ownership documents in the copyright office, a jurisdictional prerequisite to an infringement suit. *See* Order of March 29 at 1028. Second, Mr. Santy moves to disallow that portion of the Court's award of attorney's fees which pertains to the dismissed Count II. Mr. Santy suggests that because five counts were included in the original complaint, the award of attorney's fees granted in the March 29 Order and any future awards be reduced by a factor of 20 percent. Third, Mr. Santy objects to plaintiff's request for attorney's fees for the work done by Attorney Reimer. The thrust of Mr. Santy's argument in this regard is that Attorney Reimer neither filed an appearance with the Court nor is plaintiff's counsel of record, and any of his work was for the benefit of ASCAP, not plaintiffs. *See* Objection to Plaintiffs' Further Request for Attorney's Fees ¶¶ 4–5. Mr. Santy further argues that the Court should reduce the number of hours claimed by Attorney Reimer because portions of his work were duplicative of previously-filed material. *Id.* ¶¶ 9–11.

■ As this Court noted in its March 29 Order,

> It is also within the Court's sound discretion to determine whether and to what degree attorney's fees should be awarded to a prevailing copyright owner in an action such as this. In determining the amount of a reasonable award, the Court considers, inter alia, 'counsel's time and labor, the complexity of the case, the amount recovered, and the reasonableness of the time spent by counsel.'

Order at 1032 (citations omitted). Here, although Mr. Santy is correct in noting that Count II was dismissed and therefore cannot support an award of attorney's fees, the mere fact that one of five counts was dismissed does not lead to the inexorable conclusion that the total award should be reduced by the same factor, i.e., 20 percent.

■ The issues raised by plaintiffs' lawsuit were identical as to all five counts; thus, the elimination of one count would not affect to any significant degree the extent of legal work necessitated by plaintiffs' efforts to obtain relief. Accordingly, the Court sees no reason to reduce the award of attorney's fees set forth in its previous Order. By the same token, the mere fact that defendant prevailed as to one of the five counts provides no justification for an award of attorney's fees on that count. It is within the Court's discretion to award attorney's fees and to set the amount thereof. Although defendant prevailed in one count, he did so on a technicality, and he clearly did not prevail on the other counts which alleged essentially identical harm to plaintiffs' proprietary rights.

■ With regard to Attorney Reimer's request for attorney's fees for the time he spent on this matter, the Court is satisfied that, based on his affidavit, the work was fairly required to be spent on this case. Attorney Reimer's request represents, if anything, a potential understatement of the time necessitated in bringing an action which "but for defendant's recalcitrance to submit to that which the law demands of him," Order of March 29, at 1032, would have been unnecessary. Furthermore, the Court finds that the materials filed at various times in this action by plaintiffs were not duplicative, and therefore an award of attorney's fees in connection with said materials' preparation is in order.

■ Mr. Santy's argument that Attorney Reimer is not entitled to his fees because ASCAP was not a party to this litigation and Attorney Reimer was not plaintiff's attorney of record is without merit. The work performed by Attorney Reimer was for the benefit of plaintiffs and necessary to the prompt resolution of their lawsuit.

As to the hourly rate for compensation of Attorney Reimer, he has set forth two standards for the Court's consideration. He notes that if the Court were to apply comparable rates from Mr. Reimer's community—the copyright bar of New York

City—compensation would be at the rate of $250 per hour or more. On the other hand, he notes, plaintiffs' local counsel was compensated at a rate of $125 per hour in the Court's Order of March 29. Inasmuch as the purported reason for plaintiffs' utilization of Attorney Reimer's expertise was to achieve efficiencies in prosecuting this matter, and as plaintiffs' request for his fees was based on this rationale, it would make little sense to award Attorney Reimer greater fees than those charged by local counsel. Obviously, an approval of a greater hourly rate of compensation would wipe out any savings which inured from ASCAP's counsel's having to spend less time than plaintiffs' local counsel in preparing the documents at issue. The Court therefore approves Attorney Reimer's request for attorney's fees for 24 hours of work performed at an hourly rate of $125 per hour, the same rate charged by local counsel.

Defendant's motion for award of attorney's fees as prevailing party in Count II (document no. 34) is denied. Defendant's motion to disallow plaintiffs their attorney's fees as to Count II (document no. 32) is also denied. Plaintiffs are awarded attorney's fees for work performed by Attorney Richard H. Reimer, ASCAP assistant general counsel, in the amount of $3,000.

SO ORDERED.