FAMOUS MUSIC CORP. et al.

v.

BAY STATE HARNESS HORSE RAC-
ING AND BREEDING ASSOCIA-
TION, INC., and E. M. Loew.

Civ. A. No. 73–1701–F.

United States District Court,
D. Massachusetts.

Sept. 16, 1976.

As Amended Oct. 1, 1976.

Stephen S. Young, Sherburne, Powers &
Needham, Boston, Mass., for plaintiffs.

Robert F. Sylvia, Fine & Ambrogne, Boston, Mass., for defendants.

## ORDER

FREEDMAN, District Judge.

Plaintiffs, the proprietors of copyrights in musical compositions, commenced this action for copyright infringement against the defendants Bay State Harness Horse Racing and Breeding Association, Inc. ("Bay State"), a Massachusetts corporation, and E. M. Loew, the president and treasurer of Bay State, pursuant to the provisions of 17 U.S.C. §§ 101 *et seq.* Plaintiffs seek an injunction prohibiting the defendants from playing the copyrighted compositions, the minimum statutory damages under 17 U.S.C. § 101(b) for the infringement of their copyrights, costs, and reasonable attorney's fees. On the basis of the pleadings, interrogatories, depositions, and affidavits submitted by the parties, plaintiffs moved for summary judgment. Plaintiffs' motion was opposed by the defendant. Arguments by counsel were heard by the Court on August 26, 1976. After due consideration of the entire record, the Court grants plaintiffs' motion for summary judgment against the defendant corporation, Bay State, and denies plaintiffs' motion for summary judgment against defendant Loew.

■ Each of the plaintiffs is a member of the American Society of Composers, Authors and Publishers ("ASCAP") and has granted to ASCAP a non-exclusive right to license public performances of the copyrighted musical compositions for profit. The defendant corporation, Bay State, owns property in Foxboro, Massachusetts, on which Bay State Raceway is located. The raceway is managed by Bay State personnel and is open to the public upon payment of an admission fee. Defendant Bay State hired Music Box, Inc. to furnish music at the raceway for the entertainment of its patrons. The music was broadcast over the raceway's public address system. Such musical performances constitute a "public performance for profit" within 17 U.S.C. § 1(e). *Herbert v. Shanly Co.*, 242 U.S. 591,

37 S.Ct. 232, 61 L.Ed. 511 (1917). Neither of the defendants nor the raceway is licensed by the plaintiffs or ASCAP to play the copyrighted compositions. Although the defendant Loew and Prescott E. Hobson, the general manager, vice president and public relations director of Bay State, specifically prohibited the musicians from playing music in the ASCAP repertory, the defendants neither selected the particular pieces to be played by the musicians nor kept any record of the works actually played. The alleged infringements occurred on August 24, 1972 and January 6, 1973.

Both the corporate defendant, Bay State, and the defendant Loew disclaim liability on three grounds: first, that the infringing performances of plaintiffs' copyrighted musical compositions were rendered by an independent contractor; second, that even if liability could be established, plaintiffs must be estopped from asserting their claim on the basis of "unclean hands" because ASCAP failed to inform defendants of the existence of an "editing service" to aid in avoiding infringement; and third, that plaintiffs should be barred from obtaining relief because of laches. Additionally, the defendant Loew asserts that if liability is found, only the corporation is responsible since he was merely acting as an officer of the corporation and not in his individual capacity.

■ The United States Supreme Court has held that "[o]ne who hires an orchestra for a public performance for profit is not relieved from a charge of infringement merely because he does not select the particular program to be played." *Buck v. Jewell-LaSalle Realty Co.*, 283 U.S. 191, 198, 51 S.Ct. 410, 412, 75 L.Ed. 971 (1931). He will be deemed to have acquiesced in the musicians' performance if he allows the musicians the discretion to select the program. *M. Witmark & Sons v. Pastime Amusement Co.*, 298 F. 470 (E.D.S.C.), aff'd, 2 F.2d 1020 (4th Cir. 1924). Defendants argue that the present case is distinguishable from *Jewell-LaSalle Realty* since in the present case the

musicians did not have unlimited discretion to determine what music was appropriate but were instead instructed to refrain from playing ASCAP music. The plaintiffs do not dispute that such instructions were given to the musicians. Rather they argue that such prohibitions will not allow the defendants to evade responsibility. They cite *Shapiro, Bernstein & Co. v. Veltin*, 47 F.Supp. 648 (D.C.La.1942), where the court held the proprietor of a public place of amusement liable for copyright infringement, even though the proprietor had explicitly prohibited the musicians whom he had hired from playing copyrighted music in the ASCAP repertory and had presented to the court contractual agreements with the musicians to that effect.

█ The Court rejects the defendants' contention that the holding in *Veltin* is not applicable here because the musicians hired to provide music at the raceway were independent contractors and not servants, as in *Veltin*, thus absolving defendants of liability. "It is well settled that the proprietor of an establishment cannot escape liability for a copyright violation on the ground that the person furnishing the performance is an independent contractor who selects the compositions to be played." *M. Witmark & Sons v. Tremont Social and Athletic Club*, 188 F.Supp. 787, 790 (D.Mass.1960). Liability on the part of the proprietor exists "even though the orchestra be employed under a contract that would ordinarily make it an independent contractor." *Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co.*, 36 F.2d 354, 355 (7th Cir. 1929); *Bourne v. Fouche*, 238 F.Supp. 745 (E.D.S.C.1965). Defendants cannot evade responsibility for infringement on the ground that the musicians they hired were independent contractors over whom they had no control and then contradictorily claim that they could not have acquiesced in the playing of ASCAP music because they had prohibited the musicians from using ASCAP compositions.

█ The defendants contend that even if they are responsible for the infringements, the plaintiffs are estopped from asserting their claim because their agent, ASCAP, failed in its obligation to advise the defendants of the availability of an editing service by which ASCAP would, upon request, inform any prospective user of a particular piece of music, whether or not that composition was part of the ASCAP repertory. Defendants rely on *Tempo Music v. Myers*, 407 F.2d 503 (4th Cir. 1969), in which the Fourth Circuit held that ASCAP had such an obligation under the antitrust consent decree under which ASCAP operates, and that it would be inequitable to allow the plaintiffs, members of ASCAP, to recover when ASCAP had neither provided the defendant with a listing of the ASCAP repertory nor advised him of the availability of an editing service. In *Myers*, ASCAP had failed to provide the defendant with any information to facilitate avoidance of copyright infringement. In the present case, in contrast to *Myers*, ASCAP had provided such information. In its letter of August 8, 1972, to defendant Bay State, ASCAP stated:

> With respect to the works in our repertory, please be advised that a three-volume ASCAP Index of Performed Works is available for your examination or you may purchase the set if you so desire. In addition, since compositions are added daily, the Society maintains a complete list of works of the ASCAP repertory in our New York office—One Lincoln Plaza—New York, New York 10023.
>
> Should you require any further information about our repertory, we shall be happy to furnish the same upon request.

The Court finds that the second paragraph quoted above fulfills the duty imposed upon ASCAP by the *Myers* decision. There is nothing magic in the words "editing service" and failure to use these precise words in its letter to Bay State does not by itself estop the plaintiffs from asserting their claim. The first paragraph of ASCAP's August letter quoted above had already stated the locations of ASCAP listings which were available for inspection or purchase by the defendants. The second paragraph would be redundant unless it was interpreted to include additional assist-

ance in avoiding infringement, such as the editing service required by *Myers*. ASCAP therefore fulfilled its obligations in the present case.

There is some dispute as to the knowledge of defendants' legal representative, Mr. Samuel Berkett, regarding the existence of ASCAP's editing service since Mr. Berkett was formerly ASCAP's New England Division Manager and had been employed by ASCAP for 28 years. In view of the above finding, this dispute is irrelevant to the resolution of this case.

■ The Court finds nothing in the record to support the defendants' allegation of laches nor does counsel for the defendants offer any authority for such a defense. Plaintiffs waited approximately five months after the date of the last infringement before bringing this action. However, there is nothing to indicate that plaintiffs acquiesced in or failed to object to defendants' infringement so as to cause defendants financial hardship. *Greenbie v. Noble*, 151 F.Supp. 45, 60 (S.D.N.Y.1957), or that plaintiffs remained inactive until defendants' actions proved successful, *Universal Pictures Co. v. Harold Lloyd Corporation*, 162 F.2d 354, 372 (9th Cir. 1947). The defense of laches is without merit.

■ Defendant Loew argues additionally that even if the corporation is liable for the copyright infringement, he is not personally liable as a joint tortfeasor. The Court concludes that factual issues remain to be resolved in order to determine Loew's liability. It is undisputed that Loew is the president and treasurer of Bay State. However, this alone is insufficient to establish Loew's liability as a joint tortfeasor. Nor is Loew's affirmative response in his deposition to plaintiffs' question whether Loew considered himself to be the one who manages and controls the racetrack sufficient to establish liability. The exact nature and degree of that control must be ascertained. Courts which have found a corporate officer liable as a joint tortfeasor in copyright infringement cases have done so on the bases that: (1) the officer personally participated in the actual infringement, *H. M. Kolbe Co.*

*v. Shaff*, 240 F.Supp. 588, 589 (S.D.N.Y.), *aff'd per curiam*, 352 F.2d 285 (2d Cir. 1965); or (2) the officer derived financial benefit from the infringing activities either as a major shareholder in the corporation, *Warner Bros.-Seven Arts, Inc. v. Kalantzakis*, 326 F.Supp. 80, 82 (S.D.Tex.1971), or through some other means such as receiving a percentage of the revenues from the activity giving rise to the infringement, *Shapiro, Bernstein & Co., Inc. v. H. L. Green Co.*, 316 F.2d 304 (2d Cir. 1963); or (3) the officer used the corporation as an instrument to carry out a deliberate infringement of copyright, *Adventures in Good Eating, Inc. v. Best Places to Eat, Inc.*, 131 F.2d 809, 814 (7th Cir. 1942); or (4) the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement, *Tempo Music, Inc. v. International Good Music, Inc.*, 143 U.S.P.Q. 67 (W.D.Wash.1964), *aff'd sub nom., K-91 Inc. v. Gershwin Publishing Corp.*, 372 F.2d 1 (9th Cir. 1967); or (5) on the basis of some combination of the above criteria, *L & L White Metal Casting Corp. v. Cornell Metal Corp.*, 353 F.Supp. 1170, 1175 (E.D.N.Y.1972), *aff'd*, 177 U.S.P.Q. 673 (2d Cir. 1973); *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Whether any of these standards are applicable to the present case can only be determined by additional facts. The plaintiffs' motion for summary judgment against Loew is therefore denied.

The Court orders as follows:

1. Plaintiffs' motion for summary judgment against defendant Loew is denied. Plaintiffs' motion for summary judgment against defendant Bay State is allowed in the amount of the statutory minimum set out in 17 U.S.C. § 101(b) of $250.00 per count for each of the ten counts, *Jewell-LaSalle Realty Co. v. Buck*, 283 U.S. 202 [51 S.Ct. 407, 75 L.Ed. 978] (1936), or in this case, judgment for $2,500.00.

2. Defendant Bay State and all persons acting under the direction, control, permission or license of Bay State are

enjoined and restrained permanently from publicly performing plaintiffs' copyrighted musical compositions and from causing or permitting the said compositions to be publicly performed at the Bay State Raceway in Foxboro, Massachusetts, or in any place owned, controlled, or maintained by the defendant and from aiding the public performance of such composition in any such place, or otherwise. *Interstate Hotel Co. v. Remick Music Corp.*, 157 F.2d 744 (8th Cir. 1946); *cert. den.* 329 U.S. 809 [67 S.Ct. 622, 91 L.Ed. 691] (1946).

3. Plaintiffs are also entitled to a reasonable attorney's fee under the provisions of 17 U.S.C. § 116 and a reasonable attorney's fee in this action is $1,000.

4. Plaintiffs are awarded costs under 17 U.S.C. § 116.

5. There does not appear to be any dispute as to the validity of the copyrights or their subsequent assignments, although no documentary evidence has been submitted in support of either. The Court will therefore stay action in this case for 10 days from the date of this order to allow plaintiffs to submit certified copies of the certificates of registration of the copyrights involved and documentary proof of the validity of their subsequent assignments to the plaintiffs. Failure to do so will negate the summary judgment granted by this order.

The Court received the certified copies of the copyright Certificates of Registration and their assignments as requested. The order is thereby effective.