FAMOUS MUSIC CORP. et al.,
Plaintiffs-Appellees,

v.

BAY STATE HARNESS HORSE RACING AND BREEDING ASSOCIATION, INC.,
Defendant-Appellant.

No. 76–1514.

United States Court of Appeals,
First Circuit.

Argued March 7, 1977.
Decided May 18, 1977.

Joel Lewin, Boston, Mass., with whom Fine & Ambrogne, Boston, Mass., was on brief, for appellant.

Stephen S. Young, Boston, Mass., with whom Sherburne, Powers & Needham, Boston, Mass., Bernard Korman, Philadelphia, Pa., and Richard H. Reimer, Massapequa Park, N. Y., were on brief, for appellees.

Before MOORE,* ALDRICH and CAMP-BELL, Circuit Judges.

MOORE, Circuit Judge.

Defendant, Bay State Harness Horse Racing and Breeding Association, Inc. (Bay State), appeals from an order granting summary judgment to plaintiffs, Famous Music Corp., et al., owners of copyrights in certain musical compositions allegedly broadcast over a public address system at Bay State's raceway in Foxboro, Massachusetts, in violation of 17 U.S.C. § 101, et seq. The order has been reported at 423 F.Supp. 341 (D.Mass.1976).

---

* Leonard P. Moore, United States Circuit Judge for the Second Circuit, sitting by designation.

1. Apparently, in the past Bay State or its suppliers had played copyrighted music without a license, and settlements of two prior copyright infringement lawsuits had been made. *See Northridge Music, Inc. et al. v. Bay State Harness Horse Racing and Breeding Association,*

The determinative facts are not in dispute. They were placed before the District Court by means of the pleadings, answers to interrogatories, depositions and affidavits. Under the circumstances, plaintiffs' motion for summary judgment was appropriate.

To entertain its patrons when they were not absorbed in watching the races, Bay State furnished music. For this purpose, it retained Music Box, Inc. which, as an independent contractor, supplied the music and to some extent the mechanical means for its broadcast.

Bay State's president and treasurer, E. M. Loew, throughout the years was unwilling to obtain a license from the American Society of Composers, Authors and Publishers (ASCAP), of which the plaintiffs are members, and had instructed his subordinates in Bay State to instruct Music Box, Inc. not to play any ASCAP copyrighted music.[1] Despite this admonition, on August 24, 1972 and January 6, 1973 such music was played at a time when ASCAP had monitors in the field to spot and record such transgressions.

Infringement is not disputed, but as defenses Bay State claims that (1) the infringing performances were rendered by an independent contractor for which it is not responsible, and (2) that ASCAP is barred from recovering for the infringement because it neglected to advise Bay State of its "editing service" and failed to supply Bay State with a list of its copyrighted music so that Bay State or its supplier could avoid playing it.

The courts have rejected the "independent contractor" theory, *Buck v. Jewell-LaSalle Realty Co.,* 283 U.S. 191, 51 S.Ct. 410, 75 L.Ed. 971 (1931); *Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co.,* 36 F.2d 354 (7th Cir. 1929); *M. Witmark &*

*Inc. et al.,* Civil Action No. 69–1240–F (D.Mass.) (dismissed by stipulation, September 15, 1971); *Almo Music Corp. v. Bay State Harness Horse Racing and Breeding Association, Inc. et al.,* Civil Action No. 70–1474–M (D.Mass.) (dismissed by stipulation, September 15, 1971).

*Sons v. Tremont Social and Athletic Club*, 188 F.Supp. 787 (D.Mass.1960); *Shapiro, Bernstein & Co. v. Veltin*, 47 F.Supp. 648 (W.D.La.1942), and with good reason. The proprietor of a public establishment operated for a profit could otherwise reap the benefits of countless violations by orchestras, itinerant or otherwise, by merely claiming ignorance that any violation would take place.

Of greater substance is Bay State's "estoppel" theory based upon the Fourth Circuit's decision in *Tempo Music, Inc. v. Myers*, 407 F.2d 503 (1969). The court there held that paragraph XIV of an "Amended Final Judgment" (entered March, 1950) in the action *United States of America v. American Society of Composers, Authors and Publishers, et al.*, Civil Action No. 13–95 (E.D.N.Y. March 4, 1950), amending a 1941 consent decree in the same action, placed ASCAP under a duty to advise Myers, a potential infringer, of its editing obligations. Applying the equitable doctrine of unclean hands, the court refused to allow the plaintiffs to assert infringement and to recover statutory damages and counsel fees. 407 F.2d at 503.

Paragraph XIV reads:

"Immediately following entry of this Judgment, defendant ASCAP shall upon written request from any prospective user inform such user whether any compositions specified in such request are in the ASCAP repertory, and make available for public inspection such information as to the ASCAP repertory as it has."

This directive is followed by an order that ASCAP prepare within two years and

"maintain and keep current and make available for inspection during regular office hours, a list of all musical compositions in the ASCAP repertory, which list will show the title, date of copyright and the author, composer and current publisher of each composition."

There is nothing in the amended judgment imposing a legal duty on ASCAP to notify potential infringers of an "editing service." The procedure prescribed is simple—a written request asking whether certain compositions are in the ASCAP repertory. Bay State did not make that request.

ASCAP's letter to Bay State of August 8, 1972 stated:

"With respect to the works in our repertory, please be advised that a three-volume ASCAP Index of Performed Works is available for your examination or you may purchase the set if you so desire. In addition, since compositions are added daily, the Society maintains a complete list of works of the ASCAP repertory in our New York office—One Lincoln Plaza—New York, New York 10023.

Should you require any further information about our repertory, we shall be happy to furnish the same upon request."

Bay State, having failed to take advantage of any of the steps available to secure the information it claims to have desired, is in no position to assert estoppel. We might agree with it that ASCAP's professed happiness to oblige was less than ecstatic, and that there was a conscious and deliberate difference between the blind generality of the last paragraph of its letter and the instructions it gave its field representatives, that there should be an offer to respond as to any work specifically inquired about. However, defendant is far too sophisticated to need being led by the hand.

The District Court's Order of September 16, 1976, as amended October 1, 1976, is

*Affirmed.*