MARVIN MUSIC COMPANY, et al.

v.

BHC LIMITED PARTNERSHIP, et al.

Civ. A. No. 92–10556–S.

United States District Court,
D. Massachusetts.

July 29, 1993.

---

Stephen S. Young, Paul E. Troy, Sherburne, Powers & Needham, Boston, MA, for plaintiffs.

Brian J. Moran, Burke, Weiner, Moran, Hurley & Merrick, Boston, MA, for defendants.

### MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

SKINNER, Senior District Judge.

The plaintiffs, the owners of copyrighted musical compositions and members of the American Society of Composers, Authors and Publishers (ASCAP),[1] allege six causes of action for copyright infringement based on the defendants' unauthorized public performances of six of their copyrighted songs.

1. ASCAP is an unincorporated association to which the plaintiffs have granted the nonexclusive right to license non-dramatic public performances of their copyrighted songs. *See Pedrosillo Music, Inc. v. Radio Musical, Inc.*, 815

The plaintiffs seek the full panoply of relief available under the Copyright Act, 17 U.S.C. §§ 101 to 1010, including the issuance of a permanent injunction, statutory damages amounting to $2500 per count, costs and reasonable attorneys' fees. Presently pending is the plaintiffs' motion for summary judgment, in which the plaintiffs allege that no material factual issues exist and that they are entitled to judgment as a matter of law.

### FACTUAL BACKGROUND

The infringements allegedly occurred on October 4, 1991 at the Club Cafe restaurant and lounge located in Boston's South End. The defendant BHC Limited Partnership is a Massachusetts partnership, of which defendant BHC Corporation is a general partner. The partnership owns, controls and operates the Club Cafe. Defendant Frank A. Ribaudo is the president of BHC Corporation, a general partner of BHC Limited Partnership and general manager of the Club Cafe. As general manager, Ribaudo is responsible for the day to day operations of the club, including the hiring of musicians. He is also familiar with the club's entertainment policy and the practices of the club from 1989 to present. (Ribaudo Aff. ¶ 2.)

Until December 2, 1989, the defendants held a blanket license agreement with ASCAP that authorized the defendants to publicly perform at the Club Cafe any musical composition in ASCAP's repertory. Effective December 2, 1989, however, the defendants' license agreement was terminated for nonpayment of license fees. According to the defendants, their license was terminated because of a dispute with ASCAP over the appropriate license fees. The defendants assert that ASCAP refused to recognize that the defendants had changed their entertainment policy at the Club Cafe. Under the new policy, live and recorded music was essentially limited to the restaurant/lounge portion of the club and eliminated from a separate facility (called Club Cabaret), which is part of the Club Cafe complex. ASCAP

F.Supp. 511, 513 (D.P.R.1993). On behalf of its members, ASCAP licenses restaurants, lounges and other establishments that wish to perform copyrighted songs from ASCAP's substantial repertory. *Id.*

allegedly continued to calculate the defendants' license fees based on the entire Club Cafe complex, despite the fact that, under the new policy, live and recorded music would not be routinely performed in the Club Cabaret portion of the club. The defendants have refused to pay any license fees until ASCAP factors this policy change into its fee calculations.

Following termination of the defendants' license agreement in December 1989, ASCAP contacted the defendants by letter, telephone and personal visits on approximately 18 different occasions to warn the defendants that any unauthorized performances of its members' compositions would be infringements under the Act. On May 14, 1991, for instance, ASCAP sent a certified letter to Ribaudo and the partnership that stated, in part, as follows:

> Since [the date of termination], we have advised you, by letters and visits, of your liability under The United States Copyright Law for infringing performances of our members' copyrighted musical compositions. We have also requested payment of past due fees so that your license could be reinstated and thus enable you to perform our members' work lawfully. Despite our efforts, you remain unlicensed....
>
> Until you are licensed, we must again remind you that unauthorized performances of our members' copyrighted musical compositions constitute infringements under the United States Copyright Law.

(Bonaccorso Aff., Ex. 12.) It is undisputed that the defendants have never reinstated their ASCAP license, nor have they been otherwise authorized to perform material from ASCAP's repertory.

At the time of termination, the defendants' outstanding license fees totaled $399.29. According to the affidavit submitted by AS-

CAP's New England district manager, if the defendants had been properly licensed from December 2, 1989 through December 31, 1992, the defendants would owe $4,400 in license fees. (Bonaccorso Aff. ¶ 8.) The current ASCAP fee for the Club Cafe would be $1,727 per year. *Id.* In addition, to uncover evidence of infringement at the Club Cafe, ASCAP has incurred $295.75 in investigative costs. *Id.* at ¶ 9. Accordingly, the total unpaid license fees plus investigative fees are approximately $6800. *Id.* at ¶ 10.

## DISCUSSION

■ In response to the plaintiffs' motion, the defendants have essentially conceded their liability. They acknowledge that the plaintiffs are the owners of the six musical compositions, that the songs were publicly performed at the Club Cafe on the evening of October 4, 1991, and that, at the time, the defendants were not licensed by ASCAP or otherwise authorized to perform the plaintiffs' songs. In addition, the defendants acknowledge that BHC Limited Partnership and BHC Corporation may be held jointly and severally liable for the infringements. Having conceded all of the essential elements to support a claim of copyright infringement against them, the plaintiffs' motion for summary judgment is allowed as to the partnership and corporate defendants.[2]

The only issues remaining are (1) whether defendant Ribaudo may be held jointly liable along with the other defendants for the infringements and (2) what relief the plaintiffs are entitled to under the Act.

### A. *Ribaudo's Liability*

■ A corporate officer may be held vicariously liable under the Copyright Act when: (1) the officer personally participated in the actual infringement; or (2) the officer derived financial benefit from the infring-

---

**2.** To establish liability for copyright infringement, a plaintiff must demonstrate the following:
(1) originality and authorship of the compositions involved;
(2) compliance with all formalities required to secure a copyright under the Act;
(3) plaintiffs' ownership of the copyrights at issue;
(4) public performance of the songs;

(5) lack of authorization.
*Pedrosillo Music Inc. v. Radio Musical, Inc.,* 815 F.Supp. at 514 (citing *Alamo Music Corp. v. 77 East Adams, Inc.,* 647 F.Supp. 123, 124 (N.D.Ill. 1986)); *see also Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288, 1291 (D.R.I.1982). There is no dispute regarding the validity of the copyrights listed in schedule A of the complaint.

ing activities as either a major shareholder in the corporation, or through some other means such as receiving a percentage of the revenues from the activity giving rise to the infringement; or (3) the officer used the corporation as an instrument to carry out a deliberate infringement of copyright; or (4) the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement; or (5) on the basis of some combination of the above criteria.

*Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Assoc., Inc.,* 423 F.Supp. 341, 344 (D.Mass.1976) (internal citations omitted), *aff'd,* 554 F.2d 1213 (1st Cir. 1977).

██ Measured against these standards, Ribaudo cannot escape responsibility for the infringements by hiding behind the partnership and corporate defendants. It is uncontested that, at all relevant times, Ribaudo was an officer, shareholder and partner in the organizations controlling the Club Cafe and that Ribaudo did in fact control the day to day business operations of the club, including the hiring of musicians. By virtue of his multiple roles in club management and ownership, Ribaudo clearly exerts a dominant influence over club policies and possesses the authority to control infringing activities at the club. In fact, Ribaudo was directly engaged in licensing negotiations with ASCAP, as evidenced by the fact that the majority of ASCAP's correspondence was directed to his attention. Ribaudo has also acknowledged that he knew the club's ASCAP license was terminated in December 1989 and that the defendants were not authorized to perform the plaintiffs' songs without such a license. Finally, by virtue of his multiple roles in the club's management and ownership, Ribaudo had a substantial financial stake in the infringing activity, which undoubtedly attracted patrons to the Club Cafe.

Accordingly, Ribaudo is jointly liable with his partnership and corporation for the October 4, 1991 infringements of the plaintiffs' copyrighted songs.

#### B. *Requested Relief*

Having prevailed on their motion for summary judgment, the plaintiffs may be entitled to injunctive relief, statutory damages, costs and reasonable attorney fees. 17 U.S.C. §§ 502(a), 504(c), and 505.

##### 1. Injunctive Relief

██ The Act provides that "any court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C.A. § 502(a). Once liability has been established, courts generally grant permanent injunctions if there is a "'substantial likelihood of further infringement.'" *Pedrosillo Music, Inc. v. Radio Musical, Inc.,* 815 F.Supp. 511, 516 (D.P.R.1993) (quoting *Jobete Music Co. v. Media Broadcasting Corp.,* 713 F.Supp. 174, 179 (M.D.N.C.1988)). Moreover, to prevent future infringements of copyrights held by ASCAP members, courts have extended the injunction's scope beyond individual plaintiffs' copyrights to reach any musical composition licensed through ASCAP. *See, e.g., id.* (collecting cases).

In the present case, the threat of further infringements is substantial. The defendants have been unlicensed since December 1989 and, despite numerous warnings from ASCAP, have permitted infringements to occur at their club. It is also apparent from the record that the defendants are unlikely to renew their ASCAP license at any time in the near future. Yet, according to the defendants' submissions, live and recorded musical entertainment is still provided in the restaurant/lounge portion of the Club Cafe complex. (Ribaudo Aff. ¶ 4.) Under these circumstances, an injunction barring the defendants from publicly performing without authorization any musical composition in ASCAP's repertory is appropriate.

##### 2. Statutory Damages

The defendants devote a large segment of their opposition memorandum to the fact that the plaintiffs have not offered any proof of actual damages arising from the infringements. That fact, however, is not surprising.

■ Recognizing that the measure of damages in cases of this nature is often elusive and difficult to substantiate, Congress expressly provided copyright owners with the option of pursuing statutory damages instead of actual damages. *Milene Music, Inc. v. Gotauco,* 551 F.Supp. at 1296. Under § 504(c)(1), a copyright owner may recover an award of statutory damages "in a sum of not less than $500 or more than $20,000 as the court considers just. . . ." for each infringement. 17 U.S.C.A. § 504(c)(1) (West Supp.1993). As the Supreme Court explained long ago:

> The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright, the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy.

*F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952). As a practical matter, to determine the appropriate measure of damages necessary to "vindicate the statutory policy," courts often consider two factors—the award's deterrent value and the wilful nature of defendants' infringement. *Blendingwell Music, Inc. v. Moor–Law, Inc.,* 612 F.Supp. 474, 484 (D.Del.1985) (citing *Milene Music, Inc. v. Gotauco,* 551 F.Supp. at 1296–97). Measured against these standards, awards above the statutory minimum have been routine. *Id.* (collecting cases).

■ In the present case, the plaintiffs request an award of $2500 per infringement or an award totalling $15,000 on all six counts. In support of this request, the plaintiffs correctly note that "[c]ourts in this Circuit have used the estimated ASCAP fees as something of a benchmark in evaluating statutory damages." *Brockman Music v. Mass Bay Lines, Inc.,* No. 85–2440, 1988 WL 90833, at *2, 1988 U.S.Dist. LEXIS 10321, at *5; 7 U.S.P.Q.2d (BNA) 1089 (D.Mass. Apr. 14, 1988). Because the estimated ASCAP fees and investigative costs in this case are approximately $6800, the plaintiffs argue that an award substantially less than $2500 per count would not adequately vindicate the statutory policy. According to the defendants, however, an award equal to the statutory minimum per count is justified because their conduct, properly viewed, was not "tantamount to wrongful conduct." (Defs.' Mem. at 3–4.) Instead, the defendants characterize this entire litigation as a dispute over the licensing fees demanded by ASCAP.

The defendants' argument is largely misdirected. The focus of this litigation is the defendants' infringement of the plaintiffs' copyrights, not the amount of licensing fees charged by ASCAP. Regardless of whether the defendants had a legitimate dispute with ASCAP over appropriate licensing fees, the defendants' proper recourse was clearly not to infringe the plaintiffs' copyrights at their pleasure. *Brockman Music v. Mass Bay Lines, Inc.,* No. 85–2440, 1988 WL 90833, at *2, 1988 U.S.Dist. LEXIS 10321, at *3 (finding that the "purported dispute and failures of communication [with ASCAP] provided no proper basis for continuing to perform ASCAP material during a time when the defendant was unlicensed" and awarding statutory damages of $2600 per count). To rule otherwise would seriously undermine the policy underlying the Act.

Moreover, any attempt by the defendants to mitigate their liability by characterizing this entire litigation as merely a misunderstanding is particularly unpersuasive. The defendants had ample warning that infringements of ASCAP members' copyrights would not be tolerated. Yet, the defendants apparently elected to test the plaintiffs' resolve by publicly performing the plaintiffs' copyrighted songs knowing full well that they lacked any authorization and by forcing the plaintiffs to resort to litigation to protect what was legally their exclusive property. All the while, however, as is evident from the defendants' flaccid "opposition" memorandum, the defendants possessed no meaningful defense to the plaintiffs' claims.

After careful consideration of these factors and in light of the Act's strong deterrence

policy, I conclude that an award of $2500 per count is appropriate.

### 3. Costs and Attorneys' Fees

■ Once a copyright owner prevails on an infringement claim, courts generally award costs and reasonable attorneys' fees. *Hulex Music v. Santy,* 698 F.Supp. 1024, 1031 (D.N.H.1988); *Milene Music, Inc. v. Gotauco,* at 1297–98; *see also* 17 U.S.C. § 505 (court may in its discretion allow recovery of full costs and reasonable attorneys' fees). The amount of attorneys' fees to be awarded is determined by the two-part "lodestar" method. *Codex Corp. v. Milgo Elec. Corp.,* 541 F.Supp. 1198, 1202 (D.Mass.1982). First, a reasonable fee is calculated by multiplying the number of hours reasonably expended on a case by an attorney's reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 561–66, 106 S.Ct. 3088, 3096–98, 92 L.Ed.2d 439 (1986). While this figure is presumed to be reasonable, a court may adjust the figure downward to account for unnecessary, unreasonable or unproductive hours; or upward, in unusual circumstances, to reflect superior performance. *Id.* at 564–66, 106 S.Ct. at 3097–98.

■ In the present case, the plaintiffs were represented by two partners/shareholders, Stephen S. Young and Paul E. Troy, with the Boston law firm Sherburne, Powers & Needham. Counsel's hourly rates are $210 and $200, respectively. To date, attorney Young has billed .50 hours and attorney Troy has billed 30 hours. Therefore, the lodestar figure is $6,105.00. While the defendants have not challenged the reasonableness of this figure, I note that counsel's hourly rates are well within the usual range of market rates for Boston attorneys practicing copyright law, *see Wojtkowski v. Cade,* 725 F.2d 127, 131 (1st Cir.1984) (court entitled to take judicial notice of prevailing market rates for attorneys), and that the time invested appears reasonable under the circumstances. There also appears to be no need for further adjustment. Accordingly, the plaintiffs are awarded $6,105.00 in attorneys' fees.

The plaintiffs also request approximately $1400 in additional attorneys' fees for anticipated post-judgment services, including the preparation of Bill of Costs and Execution, and communications with the court and sheriff regarding demand and levy. In my view, these anticipated fees are too speculative to justify an award at this stage of the litigation. Plaintiffs' counsel may, however, update their fee application at a later date.

■ With regard to costs, I see no reason to deviate from the normal practice of awarding full costs to the prevailing copyright owners (nor have the defendants raised any objection to such an award). Accordingly, the plaintiffs will be permitted recovery of their costs upon submission of supporting documentation. I note that the absence of a definite, final determination as to collateral issues, such as costs and attorneys' fees, does not preclude the entry of final judgment. *Pedrosillo Music, Inc. v. Radio Musical, Inc.,* 815 F.Supp. at 518 (citing *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.,* 712 F.Supp. 1257, 1264 (S.D.Tex.1989), *aff'd,* 915 F.2d 1567 (5th Cir.1990)).

## SUMMARY

The plaintiffs' motion for summary judgment is **allowed**. The clerk is directed to enter final judgment as follows: the plaintiffs shall recover statutory damages of $2500 on each of the six counts of the complaint, for a total of $15,000, plus reasonable attorneys' fees, which to date total $6,105, plus costs and interest. It is further ordered that the defendants and all persons acting under the direction, control, permission or authority of the defendants are hereby enjoined and restrained permanently from publicly performing, or causing or permitting the public performance of any musical composition licensed through the American Society of Composers, Authors and Publishers at the Club Cafe, or in any other premises owned, controlled or conducted by the defendants, and from aiding or abetting the public performance of any such compositions, without a license to so perform or have performed.

This court shall retain jurisdiction over this matter solely to consider collateral requests for additional attorneys' fees and costs.