**EMI MILLS MUSIC, INC., et al., Plaintiffs,**

v.

**EMPRESS HOTEL, INC., et al., Defendants.**

**No. CIV. 03–1940(RLA).**

United States District Court, D. Puerto Rico.

Sept. 20, 2006.

---

Raul Barrera–Morales, Raul Barrera Morales Law Office, San Juan, PR, Jesus M. Hernandez–Sanchez, Ariel Hernandez–Santana, Hernandez Sanchez Law Firm, San Juan, PR, Rafael Melendez–Ramos, Rafael Melendez Ramos Law Office, San Juan, PR, Damaris Quinones–Vargas, Damaris Quinones, Cabo Rojo, PR, for Empress Hotel, Inc., Defendant.

Jose L. Ramirez–Coll, Diego A. Ramos, Fiddler, Gonzalez & Rodriguez, San Juan, PR, Jorge R. Roig–Colon, P.R. Department of Justice—Federal Litigation, San Juan, PR, PHV Andrew Schaeffer, New York, NY, for Billy Strayhorn Songs, Inc., Dreamworks Songs, Emi Mills Music, Inc, Universal Polygram International Publishing, Inc., Universal Studios, Plaintiffs.

### *OPINION AND ORDER*

ACOSTA, District Judge.

This is an action for copyright infringement under the United States copyright laws, 17 U.S.C. §§ 101, *et seq.* In their complaint, plaintiffs Emi Mills Music, Inc., Universal–Polygram International Publishing, Inc., Dreamworks Songs, Billy Strayhorn Songs, Inc. and Universal Studios, Inc. ("Plaintiffs" or "Copyright Owners") alleged that defendants, Empress Hotel, Inc. and Mr. Carl Palermo (collectively "Defendants"), infringed Plaintiffs' copyrights in four songs through their unauthorized public performance in defendants' premises (the "Empress Hotel"). Plaintiffs further claimed that defendants threatened to continue such infringing performances.

Non-jury trial was held on August 7 and August 8, 2006. The court having heard the testimony of the witnesses presented by the parties, reviewed the documentary evidence introduced at trial as well as the

stipulations submitted thereat hereby finds as follows.

## FINDINGS OF FACT

The songs "CARAVAN," "ALL THE THINGS YOU ARE, ARE MINE," "TAKE THE 'A' TRAIN," and "A NIGHT IN TUNISIA" (a/k/a THE MELODY STILL LINGERS ON) (collectively "the Copyrighted Works") are original works afforded protection under the copyright laws of the United States, 17 U.S.C. §§ 101, *et seq.*, and properly registered thereunder.

Plaintiffs Emi Mills Music, Inc., Universal–Polygram International Publishing, Inc., Dreamworks Songs, Billy Strayhorn Songs, Inc. and Universal Studios, Inc. are owners of the Copyrighted Works.

Plaintiffs are members of the American Society of Composers, Authors and Publishers ("ASCAP") and at all times pertinent, their songs, including each of the four songs listed above, have been in the ASCAP repertory.

ASCAP is an unincorporated membership association whose more than 230,000 members write and publish musical compositions.

Each member, including each plaintiff herein, has granted to ASCAP a non-exclusive license to authorize public performances of the members' copyrighted music. In this capacity ASCAP licenses, *inter alios*, music users, television networks and stations, radio stations, restaurants, nightclubs and hotels.

The San Juan Empress Hotel (hereinafter "Empress Hotel") is owned by defendant Empress Hotel, Inc.

Defendant Carl Palermo, at all relevant times, was President and Treasurer of Empress Hotel, Inc., and had responsibility for the control, management operations and maintenance of the affairs of said corporation.

Defendants regularly hire musicians to publicly perform musical compositions for the entertainment of Defendants' patrons. As a result thereof they derive financial benefit from these public performances inasmuch as the musicians attract or entertain paying patrons of the Empress Hotel.

Beginning on or about February 13, 1998, ASCAP took several steps to persuade the Defendants to obtain an ASCAP license and thereby obtain permission to perform lawfully copyrighted musical works in the ASCAP repertory.

During the period from February 13, 1998 through December 14, 2001, ASCAP representatives contacted defendants by way of at least 10 letters, telephone calls and personal visits as part of ASCAP's unavailing efforts to persuade Defendants to obtain a license for the Empress Hotel.

Defendants were repeatedly advised that in order to lawfully perform any of the copyrighted musical compositions in the ASCAP repertory at the Empress Hotel, permission was required from either ASCAP or the individual copyright owners directly.

Moreover, ASCAP consistently reminded Defendants of their potential liability under the United States copyright laws for the unauthorized public performance of copyrighted musical compositions at the Empress Hotel. Nevertheless, Defendants repeatedly ignored and rejected ASCAP's licensing offers.

The Defendants have not obtained an ASCAP license, nor have they obtained permission directly from ASCAP members to perform copyrighted music at the Empress Hotel.

During trial, Dean Demerritt, Director of Licensing for ASCAP, testified that ASCAP calculates the license fees charged to

hotels based on the hotel/motel's expenditure statement and ASCAP's licence fee schedule. Mr. Demerritt testified that, in the normal course of business, the information provided by hotels and motels in these statements is used to calculate the appropriate fees with the assistance of the fee schedule.

Defendants never filled out an expenditure statement for the Empress Hotel from the time they were contacted in 1998 up to the present. Nevertheless, relying on admissions from Mr. Palermo's testimony at his deposition in this case, Mr. Demerritt was able to estimate the Empress Hotel's license fees for the year 2006.

In his deposition Mr. Palermo testified that: (1) the Empress Hotel has 31 rooms; (2) he spent approximately $1,050.00 per week for musical performers; (3) there was dancing at the Empress Hotel but no cover charge, shows or acts, and (4) music was also played at the Empress Hotel by means of a jukebox.

Based on the aforementioned admissions and ASCAP's license fee schedule, Mr. Demerritt was able to estimate the Empress Hotel's license fees for 2006 at $2,095.00. Mr. Demerritt further explained that, as a general rule, ASCAP license fees have varied from year to year in accordance with changes in the Consumer Price Index ("CPI"). This testimony was not impeached by Defendants.

■ Even in the light most favorable to Defendants, the percentage decrease in license fees going back from 2006 to 1998 based on changes in the CPI would be balanced out by the increase in the value of money if ASCAP had been able to invest or use the license fees that the Empress Hotel would have paid if licensed from 1998 to the present. Thus, in light of the actual fees due for 2006 ($2,095.00), it would be reasonable to estimate the license fees due from 1998–2006 at about $2,000.00 per year. The Court finds this computation reasonable, since the amount of ASCAP fees are just a guide in its discretionary determination of statutory damages for copyright infringement. *See, Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.*, 725 F.2d 1, 3 (1st Cir.1983) ("[since] district court[s][are] not constrained to award only an amount equal to plaintiffs' lost license fees, [ ] the question of what plaintiffs would have received had defendants bought an ASCAP license is not determinative.")

Based on the foregoing, the estimated license fees that Defendants would have paid had the Empress Hotel been properly licensed by ASCAP from 1998 to 2006 total approximately $18,000.00.[1]

On the nights of June 20–22, 2002, Mr. Busse, an independent investigator hired by ASCAP, visited the Empress Hotel, and, while there, made contemporaneous notes of the songs he heard performed which included the four songs object of this litigation.

Specifically, on June 20, 2002 at 8:33 p.m. Mr. Busse heard the song "ALL THE THINGS YOU ARE, ARE MINE" performed at the Empress Hotel; the song "TAKE THE 'A' TRAIN" performed at 9:51 p.m. and the song "A NIGHT IN TUNISIA" performed at 10:24 p.m.

Mr. Busse heard the song "CARAVAN" performed at the Empress Hotel on the night of June 22, 2002 at 3:17 a.m.

On June 24, 2002 Mr. Busse prepared an "Investigator's Report" based on his notes regarding the songs performed at the Empress Hotel on the nights of June 20–22, 2002.

---

1. Based on and including the applicable license fee of $2,095.00 for 2006.

Defendants presented no credible evidence to contradict Mr. Busse's detailed testimony as to public performance of the Copyrighted Works at the Empress Hotel on the nights of June 20 and 22, 2002 which the court finds warrants entire credence. The Court, on the other hand, did not believe the testimony of Defendants' key witness, James Fraschetti. The testimony of Daisy Jimenez was not relevant to the issue of performance inasmuch as she admitted to not being present at the Empress Hotel on the nights of the aforementioned infringements. The testimony of Fernando Rijo was vague and unreliable. The witness could recall whether or not he had performed at the Empress Hotel on June 22, 2002, the night when Dr. Busse identified the song "Caravan" as having been played or whether there was a substitute band performing that evening. The Court finds that, more likely than not, another Latin band was performing that evening and it played a Latino version of "Caravan," as testified to by Dr. Busse.

All of the performances at issue occurred without a license from ASCAP, or permission obtained from either the Plaintiffs or anyone acting on their behalf.

As previously noted, for more than three years prior to the aforementioned infringing performances, Defendants were aware that the Empress Hotel was not licensed to perform copyrighted musical compositions in the ASCAP repertory and that unlicensed performances of such music constituted copyright infringement, exposing them to liability and the risk of paying substantial monetary damages.

Defendants consciously chose to disregard the rights and protection afforded to Plaintiffs under the copyright laws. Defendants did not respond to any of the letters sent by ASCAP from February 13, 1998 through December 14, 2001, many of which included a license application from ASCAP. Further, Defendants failed to obtain a license despite the multiple telephone calls and personal contacts from ASCAP representatives. In sum, Defendants have remained unlicensed notwithstanding ASCAP's repeated efforts to persuade them to obtain one.

## CONCLUSIONS OF LAW

■ The Copyright Act, 17 U.S.C. §§ 101 *et seq.* provides a copyright owner the exclusive right to perform its copyrighted song publicly as well as to authorize the public performance of the work. 17 U.S.C. § 106(4) ("[T]he owner of copyright under this title has the exclusive rights to do and to authorize," with regard to a musical work, the right "to perform the copyrighted work publicly."). This framework enables the owner of the copyright to assign the licensing of public performances to others, such as ASCAP, on terms amenable to the copyright owner. *Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288, 1292 (D.R.I.1982). Those who publicly perform the song without permission from the copyright owner thereby infringe the copyright. 17 U.S.C. § 501(a).

■ The elements of copyright infringement claim based on the unauthorized public performance in violation of 17 U.S.C. §§ 101 and 106(4) are:

(1) authorship of the songs in question;

(2) ownership of copyrights;

(3) compliance with the statutory requirements to obtain copyrights; and

(4) unauthorized

(5) public performance.

*Latin Am. Music Co., Inc. v. Archdiocese of San Juan,* 194 F.Supp.2d 30, 37 (D.P.R. 2001). *Peer Int'l Corp. v. Latin Am. Music Corp.,* 161 F.Supp.2d 38, 45 (D.P.R. 2001). Only one of the five elements is disputed in this action: Defendants' public

performance of the compositions. Defendants conceded the remaining elements of Plaintiffs' required proof.

◼ Copyright registration certificates constitute prima facie evidence of the facts stated therein. 17 U.S.C. § 410(c). *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005). Plaintiffs conclusively established their ownership of valid copyrights in the four songs in suit by offering into evidence the copies of copyright registration certificates and other pertinent documents, which were stipulated by the parties as Plaintiffs' *Exhibit 1.* Further, ownership of valid copyrights in the relevant songs was stipulated by the parties. Hence, the Court is convinced that the first three elements of proof articulated by the court in *Peer Int'l Corp.*, 161 F.Supp.2d at 45 have been established. *See, Pedrosillo Music, Inc. v. Radio Musical, Inc.*, 815 F.Supp. 511, 514–515 (D.P.R.1993).

Defendants stipulated that at the time Plaintiffs' four songs were performed, none of the Defendants had permission from either Plaintiffs, ASCAP, any of AS-CAP's members, or anyone acting on their behalf to publicly perform any of the musical compositions in the ASCAP repertory. Accordingly, the aforementioned performances of Plaintiffs' songs were unauthorized. *See, id.* at 515; *Milene Music*, 551 F.Supp. at 1294.

As to the only disputed element of plaintiffs' copyright infringement claim, *i.e.,* public performance, the same occurs when the work is displayed "at a place open to the public... by means of any device or process...." 17 U.S.C. § 101. The testimony of ASCAP's investigator, Dr. Walter Busse, established to the Court's satisfaction the public performance of Plaintiffs' four songs at the Empress Hotel on June 20 and 22, 2002. *See, e.g. id.*, at 1293.

◼ Although Plaintiffs are not seeking statutory damages for willful infringement in this case, Defendants' knowing infringement of the copyright laws is relevant to this Court's determination as to the amount of statutory damages that should be awarded. *Rare Blue Music, Inc. v. Guttadauro*, 616 F.Supp. 1528, 1530 (D.Mass.1985) ("Among the factors to be considered in awarding statutory damages are (1) expenses saved and profits reaped by defendants in connection with the infringement; (2) revenues lost by the plaintiffs, and (3) whether the infringement was willful and knowing, or whether it was accidental and innocent.").

◼ Defendants have advanced no excuse for having failed to obtain proper authorization to use copyrighted music at the Empress Hotel. In contrast thereto, ASCAP undertook extensive efforts to inform Defendants of their responsibilities and potential liability under the copyright laws. These efforts included telephone calls, personal contacts, and at least ten letters informing Defendants of their need to purchase a license agreement from AS-CAP in order to publicly perform ASCAP members' music. Accordingly, we find that Defendants' public performance of the four Copyrighted Works on June 20 and June 22, 2002 was deliberate and willful. *Id.; Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 381 (7th Cir.1988); *Swallow Turn Music v. Wilson*, 831 F.Supp. 575, 579–580 (E.D.Tex.1993).

Copyright law provides for joint and several liability. "If various defendants partake in an event or series of events which violate rights protected by the Copyright Act they will be held jointly and severally liable to plaintiff." *Robles Aponte v. Seventh Day Adventist Church Interamerican Division*, 443 F.Supp.2d 228, 231–32 (D.P.R.2006).

◼ In particular, a corporate officer may be held vicariously liable under the

Copyright Act when he: (1) personally participated in the actual infringement; (2) derived financial benefit from the infringing activities as either a major shareholder in the corporation, or through some other means such as receiving a percentage of the revenues from the activity giving rise to the infringement; (3) used the corporation as an instrument to carry out a deliberate infringement of copyright; (4) was the dominant influence in the corporation, and determined the policies which resulted in the infringement, or (5) on the basis of some combination of the above criteria. *Marvin Music Co. v. BHC Ltd. P'ship*, 830 F.Supp. 651, 654–655 (D.Mass.1993) (*citing Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Assoc., Inc.*, 423 F.Supp. 341, 344 (D.Mass.1976)) (internal citations omitted), *aff'd*, 554 F.2d 1213 (1st Cir.1977).

In this case the parties stipulated that defendant Carl Palermo was, at all relevant times, President and Treasurer of Empress Hotel, Inc., and had responsibility for the control, management operations and maintenance of the affairs of said corporation. The parties also stipulated that Defendants regularly hire musicians to perform publicly musical compositions and derive financial benefit from the public performances by those musicians at the Empress Hotel because the musicians attract or entertain paying patrons of the hotel. Based on these stipulated facts, the Court concludes that Mr. Palermo is jointly and severally liable with defendant Empress Hotel, Inc., under the aforementioned test outlined in *Famous Music Corp*. *See, Marvin Music Co.*, 830 F.Supp. at 655 ("by virtue of his multiple roles in the club's management and ownership, [the individual defendant] had a substantial financial stake in the infringing activity, which undoubtedly attracted patrons to the Club"); *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F.Supp. 629, 633 (D.N.H.1986) ("a corporate officer will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement.")

The court is also empowered to grant injunctive relief to prevent further copyright violations. Pursuant to the Copyright Act, 17 U.S.C. § 502(a) "[a]ny court having jurisdiction of a civil action arising under this title may... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of copyright."

"If liability is established and a continuing threat to the copyright exists, courts have usually granted permanent injunctions." *Pedrosillo Music, Inc.*, 815 F.Supp. at 516 (collecting cases). *See also, Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F.Supp. 1257, 1262 (S.D.Tex.1989) ("The general rule in alleged copyright infringement cases is that, for a preliminary injunction motion, irreparable injury is presumed once the movant has established a case of copyright infringement.") (*citing, Nw. Bell Tel. Co. v. Bedco of Minn., Inc.*, 501 F.Supp. 299, 303 (D.Minn.1980)).

"To prevent continued violations of the copyrights of ASCAP members, several courts have recently recognized that injunctions of larger scope may be appropriate, and have entered orders prohibiting defendants from performing any musical composition licensed through ASCAP." *Pedrosillo Music, Inc.*, 815 F.Supp. at 516. *See also, Sailor Music*, 867 F.Supp. at 569–570.

■ As already discussed, Defendants have been aware of their need to obtain an ASCAP license since at least 1998 and yet, to date, they have obstinately refused to

obtain one. In view of Defendants' infringement of ASCAP's members' copyrights and the possibility that further infringements might take place, the court finds that Defendants, their agents, employees and anyone else acting in concert or privity with them should be permanently enjoined from publicly performing any musical composition licensed through ASCAP at the Empress Hotel or any other premises owned and controlled by Defendants.

■ The Copyright Act, 17 U.S.C. § 504(c)(1), provides in pertinent part that "the copyright owner may elect... to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in that action, with respect to any one work ... in a sum not less than $750 or more than $30,000 as the Court considers just." The determination of statutory damages under 17 U.S.C. § 504(c)(1) is left solely to the discretion of the trial court, and review of the court's decision on this issue is "extremely narrow." *Morley Music Co.*, 725 F.2d at 3. *See, Douglas v. Cunningham*, 294 U.S. 207, 55 S.Ct. 365, 79 L.Ed. 862 (1935).

■ The United States Supreme Court has held that merely awarding plaintiffs damages equal to lost profits does not sufficiently deter infringements. Thus, courts should formulate a damage award that will achieve the deterrent purposes served by the statutory damages provision.

[A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to the infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide

enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may if it deems it just, impose a liability within the statutory limits to sanction and vindicate statutory policy.

*F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952).

Another court has put it more bluntly: infringers should not be free to "sneer" in the face of the Copyright Act; courts must put defendants on notice that it costs less to obey the Copyright Act than to violate it. *Int'l Korwin Corp. v. Kowalczyk*, 665 F.Supp. 652, 659 (N.D.Ill.1987), *aff'd*, 855 F.2d 375 (7th Cir.1988).

Recognizing the important deterrent purpose served by statutory damages, courts routinely compute statutory damages in cases such as the one presently before us between two to six times the license fees defendants "saved" by not obeying the Copyright Act. *See, i.e., Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229–30 (7th Cir.1991) (upholding an award of $40,000 in statutory damages that was approximately three times what ASCAP license fees would have been had defendant been licensed by ASCAP); *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375 (award was about three times the fees saved by the defendants); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F.Supp. 656, 660 (S.D.N.Y.1996) (awarding about six times the fees owed); *Fermata Int'l Melodies*, 712 F.Supp. at 1264 (awarding about four times the fees owed); *Sailor Music*, 640 F.Supp. at 635 (award was about twice the unpaid fees); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908 (D.Conn.1980) (awarding about four times the fees owed).

■ In this case, Defendants repeatedly rejected and ignored ASCAP's offerings

and acted as if they were not subject to the copyright laws. Defendants' knowing infringement of the copyright laws and their public performance of ASCAP members' music, despite being notified since at least February 13, 1998 of their need to obtain an ASCAP license, justifies an award of statutory damages between three and four times the amount of fees Defendants saved during the last nine years (1998–2006). Given that a fair estimate of the ASCAP fees saved during this time period is approximately $18,000.00 ($2,000.00 per year for nine years), the Court finds that an award of $15,000 per infringement, for a total of $60,000, is appropriate in this case. This award is close to three times the estimated amount of fees "saved" by Defendants and it is well within the statutory range of the maximum $30,000 per infringement that, under 17 U.S.C. § 504(c)(1), the Court is free to award.

The Court further finds that this amount should prove a deterrent to Defendants' further infringing conduct and also serve the objectives of the copyright law to deter other would-be infringers from disregarding the rights of copyright owners and the copyright law. To award less would reward Defendants for their deliberate failure to comply with the law.

The Copyright Act also provides for the imposition of costs and attorneys' fees in favor of the prevailing party.

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

In awarding attorney's fees under the Copyright Act, a court does not need to apply a specific standard or make a finding of "frivolousness." The Court need only be evenhanded and may consider other factors such as "motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in some cases to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). *See also, Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 72–73 (1st Cir.1998). An award of attorneys fees will only be disturbed if the reviewing court is persuaded that the court "indulged a serious lapse in judgment." *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 875 (1st Cir.1995).

On facts very similar to the case at bar, the Rhode Island District Court concluded that:

> The defendants have deliberately and knowingly infringed upon plaintiffs' copyrights; and subsequent to such infringement, have forced the plaintiffs to engage lawyers and to resort to the courts to enforce the proprietary interests in the copyrights. The defendants, in the court's view, have come forward with no justification for their actions, nor any colorable grounds upon which defense or mitigation could be predicted. The Court believes that this litigation fairly cries out for an award of attorneys' fees.

*Milene Music, Inc.*, 551 F.Supp. at 1298.

Here, Defendants deliberately and knowingly infringed Plaintiffs' copyrights; continued to perform copyrighted music in the ASCAP repertory; refused to obtain permission to perform copyrighted music, and forced this matter to be litigated through trial. Plaintiffs are therefore, en-

titled to recover reasonable attorneys' fees and costs.

The precise amount of fees and costs incurred by Plaintiffs shall be determined by this Court upon Plaintiffs' post-trial motion in accordance with Local Rule 54 of this District.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED as follows:

Defendants Empress Hotel, Inc. and Carl Palermo (referred to herein as "Defendants"), and those persons in active concert or participation with one or more of them who receive notice of this Order, by personal service or otherwise, are permanently enjoined and restrained from:

(a) Publicly performing, without a license to do so, the musical compositions in the repertory of the American Society of Composers, Authors & Publishers ("ASCAP"), including, but not limited to, the following four copyrighted musical compositions: "CARAVAN," "ALL THE THINGS YOU ARE, ARE MINE," "TAKE THE 'A' TRAIN," and "A NIGHT IN TUNISIA" (a/k/a THE MELODY STILL LINGERS ON);

(b) Causing or permitting any of such musical compositions to be publicly performed, without a license to do so, in, at, or by the Empress Hotel, or any other business owned, controlled, operated, maintained, or conducted, in whole or in part, directly or indirectly, by one or more of the defendants;

(c) Aiding or abetting the unlicensed public performance of any of such musical compositions; and

(d) Otherwise infringing the copyright in and to any of such musical compositions.

It is further ORDERED that Defendants Empress Hotel, Inc. and Carl Palermo, jointly and severally, are liable to Plaintiffs for statutory damages in the amount of sixty thousand dollars ($60,-000.00).[2]

It is further ORDERED that Plaintiffs are entitled to recover from Defendants Empress Hotel, Inc. and Carl Palermo, jointly and severally, reasonable attorneys' fees and costs of suit, in an amount to be determined upon Plaintiffs' post-trial motion for fees and memorandum of costs pursuant to Local Rule 54 which shall be filed no later than October 20, 2006.

It is further ORDERED that pursuant to 28 U.S.C. § 1961 Judgment shall bear interest from the date of its entry until paid in full.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

2. This sum is constituted by an award of fifteen thousand dollars ($15,000.00) for each of the four copyrighted musical works infringed at the Empress Hotel on the nights of June 20 and 22, 2002.